Argued February 3, reversed March 18, petition for rehearing denied April 7, 1964

# KROPITZER ET UX *v.* CITY OF PORTLAND

390 P. 2d 356

*Robert L. Hurtig,* Portland, argued the cause for appellant. With him on the briefs were Alexander G. Brown and Marian C. Rushing, Portland.

*Jonathan U. Newman,* Portland, argued the cause for respondents. With him on the brief were Cake, Jaureguy, Hardy, Buttler & McEwen and John R. Faust, Jr., Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, O'CONNELL, GOODWIN and LUSK, Justices.

O'CONNELL, J.

This is an action to recover damages for an alleged appropriation of plaintiffs' property by defendant city through inverse condemnation. Defendant demurred to plaintiffs' complaint on the ground that it failed to allege any act constituting a taking for which defendant would be required to compensate plaintiffs. The demurrer was overruled. Defendant appeals from a judgment for plaintiffs.

In 1911 plaintiffs' predecessor in interest subdivided a tract of land and dedicated to the public the streets designated in the plat. Defendant accepted the dedication and by ordinance enacted in 1912 estab-

lished the grades of the streets. In 1957 plaintiffs purchased a hillside lot in the subdivision and constructed a house on the lot. In 1960 a paved street at the established grade was authorized by defendant. In making the excavation to the grade the contractor cut into the hillside adjacent to plaintiffs' property but within the boundaries of the street. As a result of the excavation plaintiffs' land subsided. It was established that plaintiffs' land would have subsided to the same extent even if there had been no building upon it. There is no evidence that either the defendant or the contractor was negligent in any respect.

The trial court held that the defendant's conduct constituted a taking of a portion of plaintiffs' property without compensation and was, therefore, in violation of the Oregon Constitution, Article I, § 18.[1]

The right to lateral support is an interest in land. If land subsides as a result of the removal of support, the owner has been deprived of a property interest. It is "property" within the meaning of Article I, § 18, Oregon Constitution, and may not be taken without just compensation. We so held in *Mosier v. Oregon Navigation Company*, 39 Or 256, 64 P 453, 87 Am St Rep 652 (1901). In that case the defendant was a private corporation. The same principle is applicable, however, where lateral support is removed by a municipal corporation without the consent of the property owner. It follows from the foregoing that plain-

---

[1] "Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; provided, that the use of all roads, ways and waterways necessary to promote the transportation of the raw products of mine or farm or forest or water for beneficial use or drainage is necessary to the development and welfare of the state and is declared a public use." Oregon Constitution, Art. I, § 18.

tiffs here are entitled to recover unless they or their predecessors in interest had, prior to the subsidence, parted with the right to have the land supported.

■■ A landowner may, of course, convey to another an easement permitting the removal of support.[②] A similar interest in the form of a public easement may be created upon a dedication of streets for public use. The question is whether a dedication without an express grant of the right to remove support will give rise to such an easement.

Authority may be found both supporting and opposing the proposition that a dedication of land for street purposes includes an implied easement to remove necessary support to abutting property. There is a substantial body of authority supporting the view that a city stands in the same position as a private person with respect to liability for the removal of lateral support in the construction of city streets. This view is well stated in Lewis on Eminent Domain, § 126, p. 194-196 (3d ed (1909)):

> "The public, as owner of the street, is in fact an adjoining proprietor, whether it owns the fee or only an easement. Has the public any greater right than an individual proprietor, or does it hold the street subject to the same limitations and conditions that attach to private ownership? We think the latter. In the use of the street the public is subject to the same limitations that an individual would be who held the street as his private property. The abutting owner has the same rights with respect to the use of the street that he has with respect to the use of any other adjacent property. Consequently, he has a right to the support of the soil by that of the street. * * * These rights,

---

[②] Penman v. Jones, 256 Penn 416, 100 A 1043 (1917) (dissent); Hohfeld, Faulty Analysis in Easement Cases, 27 Yale L J 66 (1917).

unlike those of access and frontage, are absolute and paramount in the individual, and the public must so use and improve the streets as not to interfere with such rights, or else make 'just compensation' for the damages occasioned by such interference.

"It is evident that these rights exist in the abutting owner, unless they are taken or acquired by the public when the street is established. They always exist with respect to adjoining property, unless they have been expressly reserved or granted in favor of other property. These rights are never expressly granted, released or condemned when a street is established. The land alone is taken, or granted, or dedicated, as the case may be. But land is always understood to have attached to it these universal rights and obligations relating to its use and enjoyment.   *   *   *   The use of the land for a street does not necessarily require that these rights of support, etc., should be in the public. It is always possible and practicable to improve a street without interfering with such rights. It is vastly more for the public interest that the public should occasionally incur increased expense in making improvements, to avoid interfering with such rights, than that the public should in all cases be compelled to pay for the loss of such rights when a street is established.   *   *   *   The more reasonable   *   *   *   view is that such damages are not the subject of assessment in such cases.   *   *   *"

Authorities expressing a contrary view frequently base municipal immunity upon the theory of the dedicator's implied intent to grant an easement to remove necessary support.

"*   *   *   When, under such legislation, an owner dedicates without restriction land for a public street, he must be taken to consent, for the reasons stated in a previous section, that the public authorities may determine grades, and possibly

what future changes in grades may be necessary or desirable for the public convenience. He must contemplate that hills within the limits of the street will be reduced from the natural surface, making a cut; that ravines and low places therein will be filled up to the ordained grade or level, leaving an embankment in front of the abutting property. The right to make such improvements of the street for street purposes would seem to be embraced in his grant or dedication to the public." 2 Dillon on Municipal Corporations § 995, p. 1236 (4th ed 1890).

In some cases it appears that even in the absence of a finding of an intent to include in the dedication the right to remove support, the city is found to be free from liability simply because the public interest would thus best be served. Sometimes both of these rationales are employed in the same case. Illustrative is *Fletcher v. City of Seattle,* 43 Wash 627, 86 P 1046, 1047 (1906). There the court reasoned:

"* * * The streets are dedicated for the purpose of giving access to the adjoining lots, or of making such lots available for residence or business purposes, and the value of the lots necessarily depends upon the maintenance of streets upon which they abut. This element of value must have been taken into consideration by the dedicator, and he ought not to be heard to demand damages for the establishment of a reasonable grade, or the maintenance of a reasonable road which must be established or maintained to make his property available as town or city property, the character which he sought to impress upon it when he filed his plat, and dedicated the streets. The power to grade and improve streets and to make them convenient for pubic use is conferred upon municipalities. It is conferred for a purpose, and it is the duty of the municipality to exercise it in a reasonable way, and if it were not exercised the munic-

ipality obviously could not exist, thereby preventing the very object of the dedication. Every consideration of public policy as well as of private morals ought to compel the dedicator or his grantee to accept, without reward, the nature and necessary results of his own act."[3]

Although the opposing viewpoints discussed above are predicated generally upon the dedicator's presumed intent to include or exclude the right to remove lateral support, it seems likely that ordinarily the dedicator has no actual intent either way.[4] Where the dedicated streets are platted on hilly terrain, it is fair to assume that he would foresee the removal of lateral support for abutting lots when the streets were constructed. But this does not tell us whether or not he wishes to relieve the city from liability for removing the support.

██ If the scope of the dedication is to be resolved in terms of the dedicator's intent, it must be based upon the intent which the dedicator would have had if he had

---

[3] It is also said that a city is insulated from liability for the removal of lateral support under the doctrine of sovereign immunity. See 5 Powell on Real Property, § 699, p. 290, n. 36 (1962). Some cases have held that there is no liability because the removal of support does not constitute a "taking" within the meaning of constitutional provisions similar to Art. I, § 18 of the Oregon Constitution. Constitutional provisions to the effect that property shall not be "taken or damaged" are generally contrasted with provisions which simply proscribe a "taking," it being recognized generally that the city may be liable for the removal of support under the former but not under the latter type of provision. Compare French v. City of Bluefield, 104 W Va 129, 139 SE 644 (1927) with Crane v. Harrison, 40 Idaho 229, 232 P 578, 38 ALR 15 (1925).

[4] It has been observed that frequently an "implied" easement is recognized, not because the servient owner intended to create it, but because the public interest would be served by the recognition of the servitude. As Powell on Real Property puts it, the "fictional implications of 'intent' are genuinely rooted in considerations of public policy." 3 Powell on Real Property, § 410, p. 416 (1952) citing Buss v. Dyer, 125 Mass 287, 291 (1878).

considered the question. Inasmuch as we have no evidence or judicially cognizable statistics on this point, it is necessary to make a judicial assumption. Under these circumstances we are entitled to make the assumption that the dedicator would have intended to make a dedication which would best serve the public interest. 3 Restatement, Property § 243 (b) expresses this constructional preference as follows:

"[W]hen the limitation under one of the two or more possible constructions causes results which are more in accord with the public interest than the results which would follow from the adoption of any other possible construction, such construction is preferred."

■ We are of the opinion that the dedication of streets by the filing of a plat of a subdivision should be construed as granting to the city the privilege of removing naturally necessary lateral support in the construction of a street, assuming of course, that the work is not negligently done. A dedication is defined as a devotion of property to public uses. If this is taken to mean that the dedicator is motivated by a desire to create a public improvement by donating a part of his land for street purposes, it is not unreasonable to assume that he intends to go the full way and make a complete, rather than a partial gift to the public. A complete gift would embrace *all* of the privileges incident to the construction of the streets. The dedicator certainly would know that in building streets in a hilly subdivision there is a real likelihood that an excavation to an established grade might remove support to the land abutting the streets. If such freedom from liability is not included, the gift could well be extremely costly to the city. We shall not assume that the gift was made with such a burden of liability.

It is perhaps unrealistic to find such altruism in the dedicator's purpose. Even if we do not, there is a ground for implying an intent on the part of the dedicator to assume the cost of supporting the lots abutting the dedicated streets. Certainly it is to his advantage to have streets which will furnish a means of ingress and egress to each of the lots in the subdivision. In fact, it would seem that the private benefit to the dedicator and his successors in interest outweighs the benefit to the general public. Land is subdivided for the commercial purpose of selling lots at a profit. If the city is required to pay for the loss involved in the innocent removal of support, the public is, in effect, subsidizing private enterprise. Since the principal benefit inures to the abutting owners they, rather than the general public should bear the cost of constructing the streets. The cost of grading, curbing and paving is normally specially assessed against these abutting owners to whom the benefit accrues. They should, for the same reason, assume the cost of shoring up their own land if it is necessary to remove support in the construction of the streets.

■ A further consideration prompts us to construe the dedication favorably to the defendant city. If we should hold that the city is liable in the present case, it would follow that liability would be imposed upon the city for subsidences resulting from the construction of streets in the past, no matter how much time had elapsed between the construction of the street and the subsidence because the statute of limitations runs from the time subsidence occurs and not when support is removed.

■ The rule applied by the lower court would impose a potential liability upon municipalities which, in

Oregon, apparently has not been regarded by them as a cost of operation. If liability should be imposed, it should be made prospective through legislation. New Hampshire adopted this solution in *Landry v. Manchester,* 101 N H 412, 415, 144 A2d 909 (1958) where the court said:

> "If it may be said that the situation here works a hardship on the plaintiffs, it is apparent that the issue involves balancing the interests of municipalities with individual rights. This matter, involving as it does consideration of many practical factors, is peculiarly within the legislative province. In such cases our court has consistently adhered to the well accepted view that it is for the Legislature to decide what course they wish to follow."

The judgment of the lower court is reversed.