Argued August 21, affirmed September 28, 1973

PROSCH ET AL, *Appellants, v.* THE CITY
OF LA GRANDE, OREGON, *Respondent.*

514 P2d 351

*Leeroy O. Ehlers,* Pendleton, argued the cause for appellants. With him on the briefs were Fabre & Ehlers, Pendleton.

*Carl G. Helm,* La Grande, argued the cause for respondent. With him on the brief were Helm, Wasley & Monce, La Grande.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

FORT, J.

Plaintiffs are abutting landowners on Allium Street in La Grande. They brought suit in the circuit court seeking a declaration that the city has a duty to repair the street and a mandatory injunction requiring defendant to make presently needed repairs. They appeal an adverse decision.

Allium Street is platted as a 350 foot long street having a 50 foot width in the Modelaire Heights subdivision. It dead-ends part way up a sharply rising hillside. It is conceded that the street was dedicated to the use of the public in 1962 by the dedicators of the plat and that the city Planning Commission duly approved the plat prior to its filing.

■ Plaintiffs Paul and Fern Prosch bought a lot from the developer and built their home on it in 1964. They had their building contractor grade, widen and gravel the previously wholly unimproved road up to their lot. This was their sole access to it. The actual width of the portion of the road which they improved varied between 20 and 30 feet.[1]

Plaintiff Rose Pointon owns a house between the Prosch's house and the point where Allium Street runs into Modelaire Drive. However, that portion of Allium Street above the Prosch's driveway which fronts upon the vacant lots owned by the Bruechers, also plaintiffs herein, has not been further improved. The Bruechers have not built upon their lots, which are farther up the hill and at the end of Allium Street as platted. Indeed their lots close off any further possible extension of that street.

Subsequently, as a result of removal of dirt by an abutting landowner on the other side of the street, the edge of the roadway across Allium Street from the Prosches began to settle and erode away. Defendant city did place some rough temporary fill material in the slide area at the request of the plaintiffs on at least two occasions, in 1967 and 1968. The condition of the road continued to worsen in that area.

Accordingly, defendant thereafter placed "caution" barricades on occasion around the slide area and placed a standard "street closed" sign at the beginning of Allium Street in October 1970. During one winter

---

[1] A sewer was also then put in to serve the Prosch property as was gas and electricity, all within the dedicated road. Plaintiffs offered no evidence that these were done by or at the expense of the city, and no such contention is here made. Nor does such activity standing alone demonstrate an intent to open a dedicated street to public travel.

defendant did on one occasion scatter some gravel on a portion of Allium Street because its icy condition made it impassable for the plaintiffs.

The Prosches are still able to drive to their house; however, the sliding has narrowed the roadway so as to make backing out of their driveway difficult. On June 28, 1972, defendant formed an improvement district with the stated purpose of improving Allium Street. If carried into effect, however, this procedure would result in assessment to the benefited properties. This proceeding seeks to compel the city to effect needed repairs and to maintain the street without any assessment for street improvements, and thus without direct cost to the appellants.

■ At the outset we note that plaintiffs, as abutting property owners, have standing in this suit. *Ail v. City of Portland,* 136 Or 654, 664-65, 667-68, 299 P 306 (1931), and cases cited therein; 26 Am Jur 2d, Eminent Domain § 200.

We consider next the legal effect here of the dedication of Allium Street by the plat. In *Harris v. St. Helens,* 72 Or 377, 386, 143 P 941, 16 D Ann Cas 1073 (1914), the court said:

> "* * * Dedication is an appropriation of land to a public use, made by the owner, and accepted for such use by or on behalf of the public. * * *"

*See also: Muzzy v. Wilson,* 259 Or 512, 518, 487 P2d 875 (1971), where the court reiterated the foregoing definition.

■ The mere fact that a street has been dedicated by a developer to the public in a plat accepted for filing by a city planning commission itself imposes no duty upon the city to open that street.

In *Barton v. Portland,* 74 Or 75, 79-80, 144 P 1146 (1914), the court stated the rule:

"\* \* \* A municipal corporation is under no obligation to open a dedicated street until its use is deemed necessary by the common council. Until that time the dedicator, if the land has not been conveyed, or his grantee whose premises abut upon the street often makes such reasonable use of the proposed highway as is not inconsistent with the right of the municipality to open and improve the street when it is considered essential to the public need. \* \* \*"

*See also: Killam v. Multnomah County,* 137 Or 562, 4 P2d 323 (1931), expressly reiterating that rule.

■ It is usually a question of fact whether the city has opened a dedicated street for public use. In *Caviness v. City of Vale,* 86 Or 554, 564, 169 P 95 (1917), the Supreme Court said:

"\* \* \* There is no legal obligation resting upon a city to build sidewalks in the first instance. It may leave its streets in a state of nature and not be responsible for not having improved them, but *if it chooses to improve them* and thereby extends to the public an invitation to walk upon them, it must use reasonable diligence to keep them in repair. \* \* \*" (Emphasis supplied.)

*See also: Hendrickson v. City of Astoria,* 127 Or 1, 7, 270 P 924 (1928).

Here the trial court in its memorandum opinion stated:

"Does the evidence prove that the City has opened Allium Street to public use and thus assumed the legal duty to keep the said street in repair? The plaintiffs present no evidence that the City took any steps to improve or open the street for public travel. The only improvements to the street were done by adjacent property owners for their

own convenience. The City filled the cave-in area only after repeated requests by the plaintiffs. The action of the City in making the fill does not show that the City voluntarily accepted the dedication and performed work on the street to improve it for public use. * * *"

We agree.

In *Kropitzer v. City of Portland,* 237 Or 157, 165, 390 P2d 356 (1964), in discussing the significance of the dedication of a plat the Supreme Court said:

"* * * Certainly it is to his [the dedicator's] advantage to have streets which will furnish a means of ingress and egress to each of the lots in the subdivision. In fact, it would seem that the private benefit to the dedicator and his successors in interest outweighs the benefit to the general public. Land is subdivided for the commercial purpose of selling lots at a profit. If the city is required to pay for the loss involved in the innocent removal of support, the public is, in effect, subsidizing private enterprise. Since the principal benefit inures to the abutting owners they, rather than the general public should bear the cost of constructing the streets. The cost of grading, curbing and paving is normally specially assessed against these abutting owners to whom the benefit accrues. They should, for the same reason, assume the cost of shoring up their own land if it is necessary to remove support in the construction of the streets."

In *Kropitzer* the court concluded its opinion by adverting to the public policy considerations here presented. It said:

"A further consideration prompts us to construe the dedication favorably to the defendant city. If we should hold that the city is liable in the present case, it would follow that liability would be imposed upon the city for subsidences resulting from the construction of streets in the past, no matter how

much time had elapsed between the construction of the street and the subsidence because the statute of limitations runs from the time subsidence occurs and not when support is removed.

"The rule applied by the lower court would impose a potential liability upon municipalities which, in Oregon, apparently has not been regarded by them as a cost of operation. If liability should be imposed, it should be made prospective through legislation. New Hampshire adopted this solution in *Landry v. Manchester,* 101 N H 412, 415, 144 A2d 909 (1958) where the court said:

> " 'If it may be said that the situation here works a hardship on the plaintiffs, it is apparent that the issue involves balancing the interests of municipalities with individual rights. This matter, involving as it does consideration of many practical factors, is peculiarly within the legislative province. In such cases our court has consistently adhered to the well accepted view that it is for the Legislature to decide what course they wish to follow.' " 237 Or at 165-66.

■ An abutting property owner has a special right of access (*Ail v. City of Portland,* supra) and may make improvements to the road not inconsistent with the public's right of use. *McGowan v. City of Burns,* 172 Or 63, 75, 137 P2d 994, 139 P2d 785 (1943).

■■ Clearly, where such a person unilaterally exercises this right to improve his access, neither he nor his neighbors may complain when the municipality subsequently refuses to maintain the road. The fact that defendant, on two occasions, added fill material to the slide area and placed road-closed and caution signs on Allium Street does not standing alone establish that the city has opened the street for public use.

We conclude that the trial court correctly de-

termined that the city had not taken any steps to open Allium Street for public use, or that at any time it chose to improve it within the meaning of the above authorities.

Affirmed.