Argued and submitted December 17, 1979,
affirmed March 24, reconsideration denied May 1,
petition for review denied June 17, 1980 (289 Or 275)

# CITY OF PORTLAND,
*Appellant,*

*v.*

# NUDELMAN, et al,
*Respondents,*

## (No. A7611, 16000, CA 11088)

608 P2d 1190

[426-a]

James E. Griffin, Portland, argued the cause for appellant. With him on the briefs was Williams, Stark, Hiefield, Norville & Griffin, P. C., Portland.

Robert K. Udziela, Portland, argued the cause for respondent Rex Amusement Company. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Paul R. Meyer, Portland, argued the cause for respondents other than Rex Amusement Company. With him on the brief were Elizabeth Yeats, and Kobin & Meyer, Portland.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This condemnation proceeding was commenced by the Portland Development Commission, the urban renewal agency of the City of Portland, to acquire certain real property, improvements and fixtures. The land and building, known as the Semler Building, were owned by three siblings, defendants Laurence R. Semler, Alysmae Nudelman, and Helen Ester Spivak. Over half of the usable space in the building was occupied by members of that family. The remaining defendants are non-family tenants in the building.

In its complaint plaintiff alleged the value of the property taken to be $400,000, the same amount offered to, and rejected by, the owners prior to commencement of the litigation. The jury returned a verdict for $700,000, representing just compensation for the taking of the land, improvements and fixtures. The form of verdict submitted to the jury asked the jury to answer the following questions:

"1.   What is the just compensation for the taking of real property, improvements, and fixtures in this case?   Your answer should include the amounts, if any, reflected in your answers to questions 2(a) and 3(a) below.
"Answer:   $ _____
"2.   With respect to the fixtures owned by *defendant Rex Amusement Company (Roundup Theatre):*
"(a)   Did such fixtures contribute to the fair market value of the real property?
"Yes _____ No _____.
"If your answer is 'Yes,' what is the amount?
"$ _____
"(b)   Did such fixtures have any fair market value for removal from the real property?
"Yes _____ No _____.
"$ _____ "

Question 3 was the same as 2, but related to another tenant. The jury responded by answering the first question: $700,000. In response to questions 2 and 3 it

[427]

found that the fixtures owned by tenant Rex Amusement Company had no removal value, but contributed to the value of the real property by $20,000, and that the fixtures owned by tenant Abe Saltman, doing business as Dave's Delicatessen, also had no removal value but contributed $12,000 to the fair market value of the real property.

On appeal, plaintiff asserts 12 assignments of error, not all of which will be discussed because they were not preserved. Stripped to its essential elements, plaintiff's principle contention is that the trial court erred in the conduct of the trial in that it violated the well-established rule that in a condemnation proceeding there may be only one award based upon the fair market value of the real property, improvements and fixtures regardless of how many persons may have an interest in the property taken. Under that rule, the condemning authority takes and pays one sum for all interests in it, and the values of the separate interests in the award are determined in supplemental proceedings, if necessary. *State Highway Com. v. Burk et al.*, 200 Or 211, 265 P2d 783 (1954).

The trial court's alleged misconception of the rule, plaintiff contends, is evidenced by the trial court's denying plaintiff's motion to strike paragraphs I and II of defendant Rex Amusement Company's partial defense,[1] by the form of verdict submitted to the jury

---

[1] Those paragraphs of the affirmative defense alleged:

"I

"Plaintiff's failure to comply with ORS 281.045 and Section 302 of the Federal Uniform Relocation and Real Property Acquisition Policy Act of 1970 and making no separate offer to it as theretofore alleged.

"II

"That plaintiff, the City of Portland, has failed to comply with its obligations under ORS 281.045 and following Section 301 of the Federal Uniform Relocation and Real Property Acquisition Policy Act of 1970 and the just compensation provisions of the State and Federal Constitutions, and the regulations, guidelines and agreements it is

and by admitting evidence of value piecemeal. The essence of the issues thus raised, and which carried through the trial, is whether section 302 of the Federal Urban Renewal Act (42 USC § 4652),[2] as apparently adopted by Oregon in ORS 281.060(3),[3] changes the rule stated above that there is only one award in a

bound by in order to obtain the Federal funds being used in the project in that it is attempting to acquire the total property in question for less than the amount of its approved appraisal which is in the sum of at least $425,000.00."

This pleading was not submitted to the jury, no instructions were based on it, and no argument to the jury regarding it was made by counsel.

[2] Section 302 of the Federal Urban Renewal Act, so far as relevant, provides:

"(a) Notwithstanding any other provision of law, if the head of a Federal agency acquires any interest in real property in any State, he shall acquire at least an equal interest in all buildings, structures, or other improvements located upon the real property so acquired and which he requires to be removed from such real property or which he determines will be adversely affected by the use to which such real property will be put.

"(b)(1) For the purpose of determining the just compensation to be paid for any building, structure, or other improvement required to be acquired by subsection (a) of this section, such building, structure, or other improvement shall be deemed to be a part of the real property to be acquired notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building, structure, or improvement at the expiration of his term, and the fair market value which such building, structure, or improvement contributes to the fair market value of the real property to be acquired, or the fair market value of such building, structure, or improvement for removal from the real property, whichever is the greater, shall be paid to the tenant therefor."

[3] ORS 281.060(3) provides:

"Whenever any program or project is undertaken by a public entity which program or project will result in acquisition of real property, notwithstanding any other statute, charter, ordinance, or rule or regulation, the public entity shall:

"* * * * *

"(3) In acquiring the real property, be guided by the land acquisition policies in section 301 and the provisions of section 302 of such Federal Act."

As enacted originally in 1971, that section applied only to condemnations involving federal funds.

[429]

condemnation case. All of the defendants contended at trial that the cited legislation has changed that rule to the extent that it requires the condemning authority to pay to the tenant for tenant-owned fixtures either the amount by which those fixtures contribute to the fair market value of the real property *or* the value of those fixtures if removed from the real property, whichever is greater.

Plaintiff contends that the law has not been changed, but its broadside attack on the conduct of the trial makes it difficult to know what its target is. To sharpen our focus on the issue we need to decide, it helps to point out that plaintiff does not contend that the value of the tenants' fixtures may not be taken into account in determining the fair market value of improvements to the real property taken, nor does it contend that the fixtures here were not taken in this proceeding. Our focus, then, is only on whether removal value of the fixtures may be considered. Even if we assume, without deciding, that it was error to submit that question to the jury, it was harmless because the jury found there was no removal value to any of the tenants' fixtures.

The jury award for the entire property taken was in a single amount: $700,000. It was instructed to make that kind of award, and the form of verdict clearly stated that its answer to the first question submitted was to be just compensation for the entire taking, including the amounts, if any, reflected in responding to questions 2(a) and 3(a) which followed. In arriving at the total award, the jury was instructed to take into account the contributive value, if any, of the fixtures, and in answering questions 2 and 3 it simply stated what it determined those values to be. At most, the answers to those questions were surplusage. The judgment entered on the verdict was for $700,000, plus interest, and although the tenants were awarded a part of that amount as the value of their fixtures, that is of no concern to plaintiff, *State Highway Com. v.*

*Burk et al., supra,* and the owners of the land and building do not complain.

Plaintiff's contention that evidence of separate valuations of the land, building and fixtures was not admissible, and that the only admissible evidence of value is that encompassing the entire property taken, is without merit. *City of Portland v. Ruggero,* 231 Or 624, 373 P2d 970 (1962). *Cf. Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393, 281 P2d 707 (1955). We conclude that plaintiff's broad attack on the conduct of the trial is not well taken; if there was error in the form of verdict, it was harmless.

Plaintiff also assigns error to the denial of its motion for an order protecting it from disclosing for discovery purposes written appraisals of the property. Plaintiff contended that such appraisals were privileged as part of the attorney-client privilege. After the presiding judge indicated he was going to deny the motion, counsel for plaintiff made an oral motion to require defendants to provide copies of their appraisals of the property. The judge granted that motion, and thereafter counsel exchanged their written appraisals. Under the circumstances, plaintiff is not in a position to complain even if we assume it was correct initially; it not only acquiesced in the court's ruling, but took advantage of it for its own discovery purposes. Further, plaintiff has shown no prejudice— none of the appraisals was admitted in evidence.

Plaintiff assigns error to the overruling of its objection to the testimony of Albert Bullier, Jr., as to his opinion of the value of the land and building on grounds that it was hearsay or, alternatively, privileged. The situation is unusual in that in arriving at his opinion the witness relied upon information contained in an earlier report to the city prepared by his father, also an appraiser, with whom the witness was associated in business. Plaintiff does not contend the witness was not a competent expert, but argues

[431]

that such reliance upon another's information rendered the testimony inadmissible hearsay. The rule, however, is that "an expert witness's opinion as to value should be received even though it is based in part upon statements or reports of others * * * if the jury is informed of the source and character of the information upon which the witness draws his inferences." *State Highway Com. v. Arnold et al*, 218 Or 43, 69, 341 P2d 1089, 343 P2d 1113 (1959).

It was explained that plaintiff had hired Albert Bullier, Sr. to make a preliminary report covering the value of four blocks in downtown Portland, which included the block occupied by the Semler Building, and to make a recommendation to the City for the purposes of determining which two of the four blocks should be used for parking structures. Bullier, Jr. testified that his father, prior to making his written report in February, 1976, had asked Bullier, Jr. his opinion concerning the value of the Semler property, exclusive of fixtures. Bullier, Jr.'s opinion of value, exclusive of fixtures, which he gave his father at the time and which he repeated at trial, was $490,000. Bullier, Jr. indicated this was his own judgment of value, totally independent of that of Bullier, Sr., and that he based his opinion primarily on his own experience, although he had seen his father's report.

The jury was supplied with information with which it could weigh the testimony. We conclude that the witness's opinion was not inadmissible on grounds of hearsay.

Neither do we believe that the attorney-client or work-product privileges are applicable because neither of those privileges would attach to the information contained in the Bullier, Sr. report. The engagement of Bullier, Sr. occurred in February, 1976, nine months prior to the commencement of the condemnation proceeding in this case and seven months prior to the City's resolution to acquire the subject property, pursuant to which it proceeded to negotiate and make

offers to the defendants. Despite the fact that the presiding judge ordered the plaintiff to produce *all* appraisal reports prepared by or for it in connection with the condemnation of the subject property, the plaintiff at no time prior to trial produced Bullier, Sr.'s report for inspection by the defendants. This indicated plaintiff's own view that the Bullier, Sr. appraisal was not one relating to this condemnation, or any specific parcel of property.

In *Brink et ux v. Multnomah County,* 224 Or 507, 356 P2d 536 (1960), the Court held that a communication from an expert employed by a party made to that party's attorney for the purpose of an existing or threatened lawsuit is a privileged communication, protected from disclosure at trial. However, the court went on to state that "the privilege is not available to the client if the document which is claimed to be the privileged communication was prepared by the client's agent in the regular course of business without reference to an existing or threatened lawsuit." 224 Or at 517. The report at issue here was prepared before the plaintiff had decided to acquire the property in question and long before any steps toward preparing litigation were made. The evidence supports the conclusion that the report was not made to aid the preparation or conduct of litigation and was not a part of the work product of plaintiff's attorneys. It was, rather, contained in a report prepared for plaintiff during the planning stage to aid in its decision as to where to build the parking structure. Therefore the attorney-client privilege does not apply.

Plaintiff also contends that Bullier, Jr.'s testimony was not admissible because of the public official-public document privilege. ORS 44.040(1)(e) provides:

"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:

"\* \* \* \* \*

"(e)    A  public officer shall not be examined as to public records determined to be exempt from disclosure under ORS 192.500."

ORS 192.500(1)(f) provides:

"(1)   The following public records are exempt from disclosure under ORS 192.410 to 192.500 unless the public interest requires disclosure in the particular instance:

"* * * * *

"(f)   Information relating to the appraisal of real estate prior to its acquisition."

Assuming, without deciding,that the Bullier, Sr. report may be classed as information protected by the privilege, this privilege does not apply to bar the witness's testimony independent of the report unless the witness is a public official. The testimonial privilege here involved is in derogation of common law and therefore is construed narrowly. *State ex rel Calley v. Olsen,* 271 Or 369, 532 P2d 230 (1975). We find no basis for concluding that Bullier, Jr. was a public official within the meaning of the privilege.

Plaintiff assigns error to the admission in evidence of its letter to one of the owners offering to purchase the property because a condemnor's pre-litigation offer is not admissible, citing *State Highway Comm. v. Freeman,* 11 Or App 513, 504 P2d 133 (1972). In the case at bar the letter offered $650,000, but the option enclosed with the letter stated the price to be $400,000. Plaintiff's initial objection was on the ground of relevance. When pressed by the trial judge for his specific objection, counsel stated it was based upon the error in the letter. That was not a basis for excluding it. Subsequent testimony by the recipient described her telephone conversation with the writer of the letter, and receipt of a subsequent letter explaining the error and offering $400,000. No error is assigned to that testimony, but error is assigned to the examination of the sender of the letter inquiring into the basis upon which the original offer was made, the answer being that it was based upon two fee appraisals whereas the letter stated that the offer was not less than the

[434]

approved appraisal. After the original letter was received in evidence and the recipient's testimony was admitted without objection, the cat was out of the bag. Furthermore, the only evidence of value offered by plaintiff was that the property was worth $425,000, rather than $400,000, as offered and claimed. We find no reversible error.

Plaintiff takes issue with the testimony of defendants' expert witness R. J. Frank on two grounds. First it argues that Frank's appraisal of the fixtures was not arrived at independently but was based upon the report of another appraisal company. While there appears to be some basis for the contention, the trial judge asked the witness specifically whether his appraisal was based upon the witness's own independent investigation. The witness said it was, and the trial court so found. When the admissibility of evidence depends upon a question of fact, the trial court decides the question. *Harpole v. Paeschke Farms, Inc.*, 267 Or 592, 598, 518 P2d 1023 (1974). The testimony was admissible; its weight was for the jury.

Second, Plaintiff attacks Frank's appraisal of the land and building on the ground that he considered speculative uses for the building in arriving at a figure. We do not read his testimony that way. Frank explained that in evaluating the property he took into consideration whether it was worth being rehabilitated from an economic standpoint. If it was, it would be more attractive to a buyer in its present condition and its fair market value would be higher than if the building did not have that potential. He did not base his opinion of the value of the building on the assumption that if it were rehabilitated it would have that value.

Plaintiff relies on *State Highway Comm. v. Compton*, 265 Or 339, 507 P2d 13 (1973), but that case dealt with the impropriety of determining the value of property by testimony speculating what it would be worth if put to a certain use where there was no foundation

[435]

for the testimony—the evidence was speculative. Here, unlike in *Compton,* the witness, in evaluating the property as is, took into account a factor to be considered in the evaluation of the property in its present state.

Plaintiff also claims as error the court's ruling that Mrs. Timm, president and sole stockholder of defendant Rex Amusement Company, was competent to testify as to the fair market value of the fixtures (replacement value less depreciation) of its theater located in the Semler Building. Plaintiff argues that the witness's status as a corporate officer did not suffice to qualify her as competent to render an opinion. *Highway Com. v. Assembly of God et al,* 230 Or 167, 368 P2d 937 (1962). However that may be, she stated that her opinion was based upon her own experience in replacing theater seats and other equipment in the theater as well as her knowledge as an officer and sole owner of the corporation. The trial court ruled that she was competent, and in doing so did not abuse its discretion. *Gerlinger Industries v. Dept. of Transportation,* 42 Or App 103, 600 P2d 428 (1979). There was no objection to her further testimony expressing her opinion as to the contributive value of the fixtures to the real property.

Plaintiff contends that the trial judge improperly excluded from evidence the price which defendant Alysmae Nudelman, one of the present owners, paid for her brother's quarter interest in the property in 1971. As a general proposition, "it is within the sound discretion of the trial court to admit or exclude testimony as to the purchase price of property paid by the owner of property taken in a condemnation proceeding." *Highway Commission v. Jones,* 237 Or 372, 374, 391 P2d 625 (1964); *Highway Comm. v. Empire Building,* 17 Or App 616, 620, 523 P2d 584, *rev den* (1974). The purpose of admitting such evidence is that it may be relevant to show the present fair market value. If the circumstances of the sale or purchase are such that

the evidence would have minimal probative value, it is not an abuse of discretion for the trial court to exclude it. Because the plaintiff made no offer of proof after the trial court's ruling, all we have before us is the purchase by an owner of an undivided quarter of an undivided quarter from her brother more than five years ago. We cannot say that the trial judge abused his discretion, particularly where we are not told whether the price paid was less than the value plaintiff claimed the property was worth. *Highway Commission v. Jones, supra.* For all we know, the purchase price was higher than the plaintiff claims the property is worth.

Finally, plaintiff contends the trial court erred in allowing counsel for defendants to cross-examine one of plaintiff's expert witnesses respecting fees paid to him. From that cross-examination it was learned that the expert received a total of $7500 for appraising, not only the property at issue in this case, but the whole block of which the property was a part. Plaintiff contends that because an expert witness may not be questioned about fees he was paid as an appraiser and witness in prior unrelated cases, *Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393 at 406, the court erred in permitting it here.

In so contending, plaintiff ignores the manner in which this matter arose. The witness was asked whether he was paid $7500 for appraising this property; he responded, "No, I got $7500 for appraising the whole block."

The nature of the witness's contract with the city required reference to his work on property other than merely that of defendant's in this case. He had been paid for appraising the entire block, and it would have been misleading had that fact not been brought out. The cross-examination therefore did not open the door to purely collateral matters. *Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393 at 406. There was no error.

Affirmed.