Argued and submitted September 1, 1999, reversed and remanded in part; otherwise affirmed September 27, 2000

## STATE OF OREGON,
### by and through its
### Department of Transportation,
*Respondent,*

*v.*

## Howard A. WINTERS,
*Appellant.*

## (9604-03061; CA A100371)

10 P3d 961

Donald Joe Willis argued the cause for appellant. With him on the briefs were Karen O'Kasey and Michael A. Cohen.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge,* and Wollheim and Brewer, Judges.

---

\* Deits, C. J., *vice* Landau, P. J.

BREWER, J.

## BREWER, J.

Defendant owned property adjacent to State Highway 125 in Multnomah County. In 1996, plaintiff, the State of Oregon, through the Department of Transportation, proposed to acquire a strip of property from defendant along the highway for the purpose of mitigating rock slides. Defendant opposed the acquisition, and plaintiff commenced this action for condemnation. In his answer, defendant asserted three counterclaims for inverse condemnation and one counterclaim for trespass. Defendant appeals from an adverse judgment, assigning error to the trial court's rulings on his inverse condemnation counterclaims. He also assigns error to the trial court's failure to admit evidence that he asserts was relevant for the purpose of determining just compensation for the condemned property and to the court's refusal to permit discovery that defendant asserts was necessary to determine whether he was entitled to attorney fees.

The relevant facts are not disputed. Defendant's total property consists of 163 acres of farmland adjacent to State Highway 125 near Dabney State Park. A county road also ends at a marker located on defendant's property. Defendant has owned the property since the 1950s, and he has used it for agricultural purposes and timber production. The highway lies between the Sandy River and defendant's property. The highway is near river level, and defendant's property slopes steeply upward on the other side of it. The highway adjacent to defendant's property has a history of rock fall. In 1990, a bluff on defendant's property overhanging the highway collapsed, sending 30,000 cubic yards of rock onto the highway. In 1991, defendant conveyed to plaintiff a permanent slope easement and an access easement running from the end of the county road to the slide area. The easements were granted to facilitate the repair of rock slides on the north side of the highway and to prevent rock from sloughing off onto the highway. The state paid defendant $7,000 for the slope and access easements.

In 1996, plaintiff proposed to acquire a narrow strip of defendant's property consisting of approximately 2.7 acres directly above and along the highway. The purpose of the proposed acquisition was to mitigate further a rockslide to the

west of the Stark Street Bridge and to "relocate, construct, improve and maintain" the highway. The plan called for use of the 1991 access easement to facilitate construction of a gradual slope up the face of the cliff above the highway, including a "sliver cut" off the side of the slope that would allow rock to fall into a safe area. The state intended to use the excavated rock for construction on Interstate Highway 84. Defendant contested the lawfulness of the taking and the scope of the project and also asserted that it would damage scenic and historic features in the area.

In April 1996, plaintiff filed a complaint to condemn the parcel and also sought the right to enter and use defendant's remaining property to facilitate the project work. Plaintiff alleged that just compensation for the property was $20,500. A lengthy phase of negotiations ensued between the parties concerning the necessity, scope, and safety of the project. By February 1997, plaintiff had determined that the project as originally proposed was not feasible because the condemned area was not large enough. Plaintiff reduced the scope of the project on the recommendation of the general contractor. As revised, the project eliminated the cut in the cliff and the removal of rock. Instead, plaintiff proposed to cut trees along the top edge of the cliff, anchor large rock blocks to the cliff, install a wire mesh over the slope, and cover the base of the cliff with concrete.

The case was bifurcated for trial. In the first phase of trial, which was held in February 1997, the court determined that the taking was lawful. The second portion of the case involved the question of just compensation for the condemned property and the disposition of defendant's counterclaims. After the court determined that plaintiff was entitled to take the property, plaintiff filed an amended complaint alleging that its true value was $8,050. In his supplemental answer, defendant objected to plaintiff's reduced estimate of just compensation. Defendant also asserted four counterclaims.

The first counterclaim, for inverse condemnation, alleged that plaintiff's surveyors entered defendant's property without permission after the commencement of the condemnation proceeding and "appropriate[ed] the same for a

public purpose in the nature of a temporary work easement." Defendant sought compensation in the sum of $2,000 for the alleged taking. Alternatively, in his second counterclaim, defendant alleged that the surveyors' use of the property constituted a trespass.[1] Defendant's third counterclaim alleged inverse condemnation for over-use of the 1991 easement during the course of the project and sought compensation for that additional burden in the amount of $5,000. In his fourth counterclaim, also for inverse condemnation, defendant alleged that plaintiff's use of the condemned property as originally planned would cause a loss of lateral support and erosion to defendant's adjacent property and that just compensation for the taking of those rights is $150,000.

At trial, defendant moved for a directed verdict on his first counterclaim for inverse condemnation. The trial court denied the motion. The court granted plaintiff's motion for a directed verdict on defendant's fourth counterclaim. The parties' remaining claims were tried to a jury. The jury returned a verdict for plaintiff on defendant's first and third counterclaims for inverse condemnation but found for defendant on the trespass counterclaim and awarded him damages of $2,000. The jury also awarded defendant just compensation of $28,888 for the taking of the 2.7 acre parcel.

In his first assignment of error, defendant contends that the trial court erred in denying his motion for a directed verdict on his first counterclaim. In reviewing the trial court's ruling, we consider the evidence in the light most favorable to plaintiff, the nonmoving party. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). The verdict will not be set aside "unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary" to support the verdict. *Id.*

In his first counterclaim, defendant alleged that the surveyors' presence on his property during the project amounted to the taking of a temporary work easement and, therefore, resulted in inverse condemnation. Inverse condemnation arises from government action that has the effect

---

[1] Plaintiff moved to dismiss the trespass claim, asserting that defendant had failed to comply with the notice requirements of the Oregon Tort Claims Act. The trial court rejected that contention and plaintiff does not renew it on appeal.

of taking property without the formal exercise of the power of eminent domain. *Dept. of Transportation v. Hewitt Professional Group*, 321 Or 118, 130-31, 895 P2d 755 (1995). A "taking" generally is defined as any "substantial" interference with private property rights. *Hawkins v. City of La Grande*, 315 Or 57, 68, 843 P2d 400 (1992); *Vokoun v. City of Lake Oswego*, 169 Or App 31, 36, 7 P3d 608 (2000). "Whether an interference with property rights is 'substantial' is a jury question." *Id.*; *Hawkins*, 315 Or at 72.

Defendant asserts that the surveyors' activities amounted to a taking as a matter of law because their presence deprived him the right to exclude others from his property. *See Dolan v. City of Tigard*, 512 US 374, 384, 114 S Ct 2309, 129 L Ed 2d 304 (1994) (right to exclude others is one of the most fundamental property rights); *Loretto v. Telepromter Manhattan CATV Corp.*, 458 US 419, 102 S Ct 3194, 73 L Ed 2d 868 (1982). However, the evidence showed only that plaintiff's personnel walked and parked vehicles on some portion of defendant's property on a few occasions during the course of the project. There was no evidence that the surveyors used any particular portion of the property for any extended period of time or caused any physical damage. The jury was entitled to find that any interference was insubstantial. Accordingly, the trial court did not err in denying defendant's motion for a directed verdict on his first counterclaim.

In his second assignment of error, defendant contends that the trial court erred in failing to give his requested jury instructions with respect to the first counterclaim. Defendant offered two detailed instructions. The first stated that "[i]nverse condemnation pertains to property rights not specifically sought by the condemning authority, which in this case is the State, but [are] nevertheless taken for a public purpose as a result of the government's conduct." The second instruction purported to explain the claim of inverse condemnation in the context of temporary takings, listing its elements:

> "(1) the property must be taken from a private party;
> (2) taken by the government, (3) taken for a public purpose,
> (4) the government must not have paid just compensation
> for the taking, and (5) the taking is not permanent but of

temporary duration. It is not necessary for the landowner to be denied all use of his property or that a landowner be denied economical use of his property."

The court gave a different instruction that essentially covered the elements of a claim for inverse condemnation in the context of a temporary taking. *See Thornburg v. City of Portland*, 233 Or 178, 184-85, 376 P2d 100 (1962) (claimant is required to establish that private property was taken for a public purpose, that the government failed to pay just compensation, and that the taking was temporary in duration). The court instructed, in part, that:

"With respect to defendant, it's his first counterclaim for inverse condemnation, [defendant] has alleged the State, through its employees and agents, appropriated defendant's property for a public purpose in the nature of a temporary work easement. *This would constitute a temporary taking.*

"In a temporary taking, the fair cash market value is determined by the period that the restriction was in effect and can be characterized as giving the State a lease on the property.

"* * * * *

"You may use either of these two methods ['before and after' method or 'fair cash value method'] in your determination of just compensation for property rights which you find to have been taken by inverse condemnation.

"* * * * *

"Easement is a property right. An easement is a property right. An easement is a non-possessory interest in the land of another which entitles the owner of the easement interest to use the easement for a particular purpose." (Emphasis added.)

The court also instructed the jury at length concerning a property owner's entitlement to just compensation for inverse condemnation and how that compensation is to be determined.

At trial, the court invited the parties to raise on the record any objections to the instructions given. In response, defendant's counsel stated:

"I do want to preserve my record to have objections and exceptions to any instruction that was submitted that was not given. I cannot recall any, though, that—I'm not surprised by what I heard, based on what you said in chambers, but I do want to preserve the record."

Defendant contends that the instructions given did not adequately explain the elements of the claim of inverse condemnation, or what evidence is necessary to establish the claim. He notes that the jury sent three questions to the court about the inverse condemnation claims, suggesting that the court's instructions were inadequate.

■ The short answer to defendant's argument is that, apart from his general objection, defendant failed to point out to the trial court any specific error in the instructions given. ORCP 59 H requires that "[a]ny point of exception shall be particularly stated * * *." In order to preserve an error in a jury instruction, a party must specifically except to the instruction. *Mark v. Hutchinson*, 132 Or App 613, 619, 889 P2d 361, *rev den* 321 Or 94 (1995). The purpose of requiring a specific exception is to inform the court that the instruction may be erroneous and to give the court an opportunity to correct it. *Delaney v. Taco Time Int'l*, 297 Or 10, 18, 681 P2d 114 (1984); *Ball v. Jorgenson*, 147 Or App 55, 934 P2d 634 (1997).

■ It is true that ORCP 59 H provides that the failure to give a requested instruction "imports an exception in favor of the party against whom the ruling was made." However, that portion of the rule only applies if *no* instruction at all is given on the subject of the requested instruction. *Thompson v. Inskeep*, 95 Or App 688, 690, 770 P2d 953 (1989). When another instruction on the subject is given, an express objection is required to preserve error, unless the proposed instruction is "clearly and directly" contrary to the given instruction, thereby calling attention to the alleged error. *Id.* at 692.

Defendant's proposed instructions were not so clearly and directly contrary to the instructions given by the court that they called attention to the error claimed on appeal. The trial court's instructions described the elements of inverse condemnation in the context of a temporary taking, although not in the same detail and format as defendant's

proposed instructions. In addition, defendant's general objection simply was not sufficient to explain why the court's instructions were wrong. Accordingly, we conclude that defendant has failed to preserve his argument concerning the court's failure to give his proposed instructions.

■ Defendant further assigns error to the trial court's giving of an instruction in connection with his first counterclaim based on ORS 366.365, which provides:

> "The Department of Transportation may go upon private property for the purpose of examination, inspection or survey to determine the advisability or practicability of locating and constructing a highway thereover, or the source, suitability or availability of roadbuilding materials thereon. The department may exercise this authority prior to the filing or commencement of condemnation proceedings, but in the exercise of such authority no damage shall be done the property nor shall the owner be unnecessarily inconvenienced or disturbed in the use and enjoyment of the property of the owner."

Defendant contends that the court's instruction was erroneous, because the statute authorizes entry onto private property only *before* the filing of a condemnation proceeding; it does not authorize entry onto private property *after* the commencement of a condemnation proceeding, as was the case here. Defendant also argues that the instruction was not appropriate in any event, because the activities permitted by the statute must relate to highway construction and, here, the surveyors' activities were related to a construction project on defendant's land.

Defendant did not except to the jury instruction about which he now complains. In fact, defendant did not object when the court later provided a copy of the statute to the jury, in response to its request for further instructions in connection with defendant's trespass counterclaim. In response to the court's query whether defendant had exceptions to the reinstruction of the jury, defendant's counsel stated that he reserved "whatever prior objections" he had made to the instructions that were previously given but otherwise had no exceptions.

Defendant urges that his failure to except to the court's instruction is of no consequence, because he made his objection to the relevance of ORS 366.365 clear before the jury was instructed. *See Rogers v. Hill,* 281 Or 491, 496 n 4a, 576 P2d 328 (1978) (when a party makes a clear objection to a proposed instruction in a colloquy with the court before the jury is instructed, failure to renew the objection after the instruction is given does not render the claimed error unpreserved). It is true that, in support of his motion for a directed verdict on his first counterclaim, defendant argued that ORS 366.365 does not authorize entry onto private property after the commencement of condemnation proceedings. However, unlike the circumstances in *Rogers,* that argument was not made in connection with a discussion of the proposed jury instructions but occurred in an unrelated context. Any claimed error in the court's instruction is therefore unpreserved. *See Lutz v. State of Oregon,* 130 Or App 278, 282-83, 881 P2d171 (1994) (objection to earlier evidentiary ruling did not suffice as an exception to court's subsequent limiting jury instruction dealing with the same subject matter). Moreover, defendant permitted the court to reinstruct the jury in the precise language of ORS 366.365 without making any objection, despite the court's express request for exceptions. Defendant does not assign error to the court's *reinstruction* of the jury in the statutory language. Accordingly, even if defendant's assignment of error to the initial instruction of the jury had been preserved, it would not provide a basis for reversal.

In his third assignment of error, defendant asserts that the trial court erred in denying his motion for a directed verdict on his third counterclaim for inverse condemnation based on plaintiff's alleged overuse of the 1991 easement. Defendant argues that plaintiff exceeded the permitted use by giving its general contractor permission to use heavier equipment, for a more extensive project, than was contemplated by the easement. Viewing the record in the light most favorable to plaintiff, we conclude that there was evidence from which the jury could find that *defendant* gave the general contractor permission to use the equipment on an alternate route across his property for access to the work area and that, accordingly, the 1991 easement was not overburdened.

The trial court properly denied defendant's motion for a directed verdict.

In his fourth assignment of error, defendant asserts that the trial court erred in granting plaintiff's motion for a directed verdict on his fourth counterclaim. In that counterclaim, also for inverse condemnation, defendant sought compensation for the taking of the right to lateral support of his property adjoining the condemned property. Defendant argues that, because plaintiff prevailed in its claim for condemnation of the 2.7 acre parcel, it maintains the right to perform the project as originally planned. According to defendant, there was sufficient evidence to show that excavation required to complete the original project would result in the removal of lateral support for his remaining property and would thus cause erosion. Defendant contends that this proceeding furnishes his only opportunity to litigate the loss of lateral support. In the alternative, he asserts that the counterclaim should not have been dismissed with prejudice, because such a dismissal bars any future claim for compensation should the original project eventually be undertaken, causing a loss of lateral support. We review the trial court's decision to dismiss the counterclaim with prejudice for abuse of discretion. *Bernard v. Gary J. Lekas, P.C.*, 124 Or App 416, 418, 862 P2d 564 (1993). For the following reasons, we conclude that there was insufficient evidence to establish defendant's counterclaim, but we hold that the court erred in dismissing it with prejudice.

We begin with a brief review of the legal principles governing claims for loss of lateral support. In *Mosier v. Oregon Navigation Co.*, 39 Or 256, 64 P 453 (1901), the Supreme Court explained the right of "lateral support":

> "It is familiar law that an owner of land is entitled to have it remain in the state in which it was placed by nature, supported and protected by adjoining soil. This right of lateral support, as it is called, is a right of property annexed to the land, to which the owner is as much entitled as to the land itself. If an adjoining proprietor, in excavating on his own land, removes such support, to the injury of his neighbor's soil, he is liable in an action therefor, without proof of negligence." *Id.* at 258.

The right to lateral support is an interest in land, the loss of which entitles the owner to compensation:

> " 'If, in the execution of public works under authority of law, excavations are made, and the soil of an individual gives way in consequence of being deprived of its lateral support, there is a taking to the extent of such deprivation, and the individual is entitled to compensation for the resulting damage. The right of lateral support is a part of his property in the land, as much so as his right of user or of exclusion. When he is deprived of it, his property is taken just as much as if his property was invaded.' " *Id.* (quoting 1 Lewis, *Eminent Domain* (2d ed) § 151). *See also Kropitzer v. City of Portland*, 237 Or 157, 159, 164, 390 P2d 356 (1964).

Defendant's fourth counterclaim assumes that the interest acquired by the state by condemnation includes the right to remove lateral support from the adjacent property. However, that is not the case. As *Mosier* makes clear, a condemnation or purchase of property for a public purpose does not necessarily include the right to remove lateral support to adjacent property:

> "[T]he destruction of the lateral support, and consequent sliding of the adjacent soil, is as much a taking of the soil as if the company had actually occupied it and it is therefore not within the 'constitutional limits' of the legislature to license a railroad company or any one else to remove such support without an equivalent, as required by the constitution. *Nor are the damages for such an injury included either in a grant from the owner of a right of way or in a judgment of condemnation. The assessment of damages for the right of way, or a grant for such purpose, includes the value of the land itself, as well as all incidental injury, inconvenience, or damage, incurred or liable to be incurred by the proper construction and use of the road, or by any acts necessary to such proper construction and use * * *, but not for a physical invasion of the soil outside of the right of way.*" 39 Or at 261-62. (Emphasis added.)

The Supreme Court's opinion in *Kropitzer* is not to the contrary. There, the court determined that a landowner's *dedication* of land to a municipality for the construction of a street implicitly included an easement for the removal of support to adjacent land. The court based that determination on the presumed intention of the parties. Here, in contrast, the

trial court *ordered* the conveyance of defendant's property to the state. Unlike the circumstances in *Kropitzer*, it cannot be said that defendant intended for plaintiff's taking of the 2.7 acre parcel to include the removal of lateral support. Accordingly, the right to lateral support for his retained property remains with defendant. Should plaintiff's activities on the condemned property cause a loss of lateral support in the future, an additional compensable taking may occur. *See Cereghino et al v. State Highway Com.*, 230 Or 439, 446, 370 P2d 694 (1962).

■■ We turn to the question of whether the trial court properly dismissed defendant's counterclaim with prejudice. A dismissal "with prejudice" normally creates a claim preclusion bar. *Sandgathe v. Jagger*, 165 Or App 375, 380, 996 P2d 1001 (2000). In *Sandgathe*, we held that, in view of the preclusive effect of such a dismissal, the termination of an action as premature should be without prejudice. *Id.* at 384. There, we reversed a judgment that dismissed, with prejudice, a legal malpractice claim based upon the defendant's allegedly inadequate representation of the plaintiff in a criminal case in which the plaintiff was convicted. The claim was dismissed because the plaintiff could not prove legally cognizable injury from the alleged malpractice in light of the fact that his conviction had never been overturned. We concluded that such a dismissal would improperly preclude the plaintiff from pursuing his claim against the defendant if his conviction were ultimately overturned. *Id.* at 379. Here, defendant's counterclaim was dismissed because he could not prove that any loss of lateral support had yet occurred. In the same sense as was the plaintiff's claim in *Sandgathe,* defendant's claim was premature; he did not establish any legally cognizable injury. Therefore, the trial court erred in entering a judgment dismissing the fourth counterclaim with prejudice.

■ Defendant next assigns error to the trial court's denial of his post-trial motion to compel discovery of documents. Defendant sought production of all documents relating to the state's initial appraisal of the condemned property. Defendant argued that the documents were material to his claim for attorney fees insofar as they might bear on whether plaintiff's first offer of compensation was made in "bad faith."

Defendant's attorney fee claim was based on ORS 35.346(7)(b),[2] which provides:

"If a trial is held or arbitration conducted for the fixing of the amount of compensation to be awarded to the defendant owner or party having an interest in the property being condemned, the court or arbitrator shall award said defendant costs and disbursements including reasonable attorney fees and reasonable expenses as defined in ORS 35.335(2) in the following cases, and no other:

"* * * * *

"(b) If the court finds that the first written offer made by condemner to defendant in settlement prior to filing of the action did not constitute a good faith offer of an amount reasonably believed by condemner to be just compensation."

Here, plaintiff's initial offer of compensation was $20,500. At trial, plaintiff did not offer into evidence or otherwise rely on its original appraisal report. Instead, it presented evidence that the value of the condemned property was $8,050. The jury ultimately awarded defendant compensation of $28,888.

In response to defendant's discovery motion, plaintiff asserted that the materials were prepared in anticipation of litigation and therefore were privileged from disclosure. The trial court agreed with plaintiff and denied the motion. The court found that plaintiff's initial offer had been made in good faith and awarded the state its costs and disbursements incurred pursuant to ORS 35.346(8) ("Costs and disbursements other than reasonable attorney fees and expenses as defined in ORS 35.335(2) shall be awarded to condemner in all cases other than those in which defendant is entitled to costs and disbursements under subsection (7) of this section.").

■■ ■■ We review the trial court's ruling on the discovery motion for abuse of discretion. *Doe v. Denny's, Inc.*, 146 Or App 59, 67, 931 P2d 816 (1997). In *Brink et ux v. Multnomah*

---

[2] Defendant was not entitled to attorney fees under ORS 35.346(7)(a), which allows fees to the defendant in a condemnation action "[i]f the amount of just compensation assessed by the verdict in the trial exceeds the highest written offer in settlement." Defendant does not assert that the state's highest written offer was lower than the jury's verdict.

*County*, 224 Or 507, 517-18, 356 P2d 536 (1960), the Supreme Court held that an appraisal report prepared in connection with actual or threatened condemnation litigation was privileged. In this case, the initial appraisal was prepared after plaintiff had adopted a resolution to acquire the condemned property and was made in anticipation of settlement or litigation of the claim. There is no meaningful distinction between the circumstances in *Brink* and those present in this case. Our decision in *City of Portland v. Nudelman*, 45 Or App 425, 608 P2d 1190, *rev den* 289 Or 1190 (1980), is not to the contrary. In *Nudelman*, we held that an appraisal report that was not prepared in anticipation of condemnation litigation was not privileged. Our conclusion was grounded on the facts that "[t]he report at issue * * * was prepared before the plaintiff had decided to acquire the property in question and long before any steps toward preparing litigation were made." *Id.* at 433. Here, the appraisal was performed under materially different circumstances. The trial court did not abuse its discretion in denying discovery of documents relating to the initial appraisal.

■    We turn to defendant's sixth assignment of error. At trial, defendant sought to introduce two documents relating to plaintiff's initial offer of compensation as evidence of the market value of the taken property. Exhibit 139 was plaintiff's first written offer to purchase the subject property for $20,500. Exhibit 140 was an "acquisition summary," which included plaintiff's determination of the fair market value of the property. Plaintiff moved *in limine* to exclude the documents on the ground that they constituted an offer to compromise that was inadmissible under OEC 408. The trial court denied plaintiff's motion. Defendant then offered the documents at trial as evidence of admissions by plaintiff that were relevant to the issue of just compensation. Plaintiff again objected, and this time the trial court sustained the objection.

On appeal, defendant assigns error to the exclusion of the exhibits. Defendant argues that the trial court's exclusion of the documents improperly prevented the jury from drawing an appropriate inference from plaintiff's reduction of the alleged value of the property. We conclude that the court properly excluded the exhibits.

In *Highway Com. v. Assembly of God et al*, 230 Or 167, 368 P2d 937 (1962), the Supreme Court held that the price proposed in a written offer to purchase condemned property may reflect consideration of anticipated costs of litigation if an agreement is not reached. Thus, the court held that such an offer does not preclude the condemner from later alleging a lower value in its pleadings. In *State Highway Comm. v. Freeman*, 11 Or App 513, 504 P2d 133 (1972), this court upheld the trial court's refusal in a condemnation case to admit evidence of the plaintiff's pretrial written offer of settlement. We held that the offer did not constitute an admission as to the value of the property.

Defendant notes that federal case law interpreting the Uniform Relocation Assistance Act, 42 USC § 4602, adopted in Oregon as ORS 281.045 to ORS 281.105, has required admission of pretrial offers to settle as admissions of value. *See United States v. 416.18 Acres of Land*, 525 F2d 450 (7th Cir 1975). That case law involves relocation payments to persons displaced by condemnation and is not controlling here. Both *Assembly of God* and *Freeman* support the trial court's ruling that the documents are not admissible as prelitigation offers of settlement. The trial court did not err in following those decisions.

In summary, we conclude that the trial court properly denied defendant's motion for a directed verdict on his first counterclaim for inverse condemnation. Defendant's failure to preserve his objections to the trial court's failure to give his requested jury instructions on the first counterclaim prevents our consideration of those objections. There was evidence to support the jury's verdict for plaintiff on defendant's third counterclaim for inverse condemnation. The trial court did not err in granting plaintiff's motion for a directed verdict on defendant's fourth inverse condemnation counterclaim, because there was no evidence that defendant's remaining property has suffered a loss of lateral support. However, the court erred in entering a judgment dismissing that counterclaim with prejudice. The trial court did not err in denying defendant's post-trial motion to compel discovery of plaintiff's initial appraisal of the condemned property. Finally, the trial did not err in excluding from evidence documents relating to plaintiff's initial offer of compensation.

Judgment dismissing defendant's fourth counter-claim with prejudice reversed and remanded for entry of judgment of dismissal without prejudice; otherwise affirmed.