Argued and submitted December 6, 2001, at Riverdale High School, Lake Oswego,
affirmed December 11, 2002

## Frederik A. STILES,
*Appellant,*

*v.*

## FREEMOTION, INC.,
an Oregon corporation;
and H. Nidecker Enterprises,
a foreign business entity,
*Respondents.*

970062CC; A107561

59 P3d 548

David C. Force argued the cause and filed the briefs for appellant.

Brad C. Stanford argued the cause for respondent Freemotion, Inc. With him on the brief was Farleigh, Wada & Witt, P.C.

Jeffrey Baker and Annala, Carey, Baker & Thompson, P. C., filed the brief for respondent H. Nidecker Enterprises.

Before Edmonds, Presiding Judge, and Kistler and Schuman,* Judges.

SCHUMAN, J.

---

* Schuman, J., vice Armstrong, J.

## SCHUMAN, J.

◼ Plaintiff fractured his right leg in a snowboarding accident at Mount Hood Meadows. He sued Nidecker Enterprise, the manufacturer of the snowboard, and Freemotion, Inc., the dealer who supplied it to him, for negligence and product liability.[1] A jury returned a verdict for defendants.[2] Plaintiff appeals, assigning error to the trial court's decision to give jury instructions based on Oregon's Skiing Activities Law, ORS 30.970 to 30.990. Plaintiff argues that those statutes apply only to claims against ski area operators, not against manufacturers or suppliers of ski or snowboard equipment. Because this jury instruction issue involves only a question of statutory interpretation, we review for errors of law. *Chaffee v. Shaffer Trucking, Inc.*, 151 Or App 323, 325, 948 P2d 760 (1997) (quoting *Community Bank v. U.S. Bank*, 276 Or 471, 478, 555 P2d 435 (1976)). Under that standard, we conclude that the statutes do not apply to defendants and that therefore the court erred in instructing the jury as it did. However, we will reverse a jury verdict because of an erroneous instruction only if we "can fairly say that the instruction probably created an erroneous impression of the law in the minds of the [jurors] which affected the outcome of the case." *Waterway Terminals v. P. S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970). Under that standard, we affirm, because the erroneous instruction could not have affected the outcome of the case.

◼ Plaintiff was employed at Mount Hood Meadows and often spent his free time snowboarding. Freemotion loaned him a snowboard that was manufactured by Nidecker. Plaintiff was using that snowboard at the time of the accident. He claims that the product design was defective because the front binding was placed forward of the center of gravity, that defendants failed to warn him of that design defect, and that as a result he fell and injured himself when he caught the

---

[1] Plaintiff's amended complaint also contained a claim for reckless misrepresentation against defendant Freemotion, Inc. That claim was dismissed at trial, and plaintiff does not assign error to that dismissal.

[2] Nidecker Enterprises and Freemotion, Inc., filed briefs that present the same legal issues. In addressing their arguments we refer to them together as "defendants."

front edge of the board as he went over a small ridge. Defendants asserted several affirmative defenses based on the Skiing Activities Law, including statutory assumption of risk, and asked for jury instructions based on that law. Over plaintiff's objection, the trial court included such instructions. In particular, the judge told the jury, "Now I'm going to instruct you about—three instructions regarding the law regarding skiing or snowboarding, as provided by Oregon law[,]" and gave the following instructions:[3]

"The law of the State of Oregon provides that skiers assume certain risks. A skier is any person who is in a ski area for the purpose of engaging in the sport of skiing, or who rides as a passenger on any ski lift device. An individual who engages in the sport of skiing accepts and assumes the inherent risks of skiing, insofar as they are reasonably obvious, expected or necessary.

"The inherent risks of skiing include but are not limited to those dangers or conditions which are an integral part of the sport, such as changing weather conditions, variations or steepness in terrain, snow or ice conditions, surface or subsurface conditions, bare spots, creeks and gullies, forest growth, rock, stumps, lift towers and other structures and their components, collisions with other skiers, and a skier's failure to ski within the skier's own ability.

"The law of the State of Oregon also provides that skiers have certain duties. These duties include but are not limited to the following: Skiers shall be the sole judges of the limits of their skills and ability to meet and overcome the inherent risks of skiing and shall maintain reasonable control, speed and force."

Those instructions mirror the Skiing Activities Law, which provides, "[A]n individual who engages in the sport of skiing * * * accepts and assumes the inherent risks of skiing insofar as they are reasonably obvious, expected or necessary," ORS 30.975, and that defines "inherent risks of skiing" as a term that

---

[3] The trial court stated that "skiing" included snowboarding for purposes of the statutes, and no party argued otherwise. We therefore assume that to be the case, without deciding the issue.

"includes, but is not limited to, those dangers or conditions which are an integral part of the sport, such as changing weather conditions, variations or steepness in terrain, snow or ice conditions, surface or subsurface conditions, bare spots, creeks and gullies, forest growth, rocks, stumps, lift towers and other structures and their components, collisions with other skiers and a skier's failure to ski within the skier's own ability."

ORS 30.970(1). Plaintiff took exception to that series of instructions, contending that "those defenses and duties apply in cases of suits and claims against operators of ski areas and not against providers of skiing products." We agree.

The provisions of the statute echoed in the trial court's instructions do not explicitly state that only ski area operators may use the assumption of the risk defense. However, several other provisions in the Skiing Activities Law refer to ski area operators. Skiers must notify ski area operators of any injury within certain time limits. ORS 30.980(1). An action against a ski area operator must be commenced within two years. ORS 30.980(3). More tellingly, ORS 30.970(3) defines a "skier" as "any person who is in a ski area for the purpose of engaging in the sport of skiing or who rides as a passenger on any ski lift device." A "ski area," in turn, is "any area designated and maintained by a *ski area operator* for skiing." ORS 30.970(4) (emphasis added). ORS 30.975, then, declares that only persons skiing or using lifts on property owned by ski area operators assume the inherent risks of skiing. The legislature's choice to impose risk-assumption on skiers only when they are on ski area operators' property strongly implies that the purpose of the imposition is to protect only ski area operators.

Likewise, ORS 30.990 requires a ski area operator to notify skiers of their duties. If the legislature intended to confer the benefits of the statutes on nonoperators like defendants, we would expect it to have imposed on them the statutes' obligations as well. The fact that it did not reinforces the inference that nonoperators are not covered.

Those inferences, drawn from the text of the statutes at issue and from related statutes on the same topic, support

plaintiff's interpretation. On the other hand, the text of the assumption of the risk statute itself, ORS 30.975, does not, as noted above, expressly limit the defense to ski area operators. Further, the fact that other statutes within the Skiing Activities Law do expressly mention ski area operators creates the inference that where, as in ORS 30.975, operators are not mentioned, the legislature intended the omission. In short, ORS 30.975, interpreted in light of its language and in the context of the surrounding related statutes, is not absolutely unambiguous.

Whatever ambiguity that exists, however, is eliminated by *Nolan v. Mt. Bachelor, Inc.*, 317 Or 328, 856 P2d 305 (1993). In that case, the Supreme Court wrote:

"ORS 30.970 *et seq* was enacted in 1979 as Senate Bill 329. Or Laws 1979, ch 665. A Measure Analysis of SB 329, prepared for the House Committee on the Judiciary, stated in part:

" 'The purpose of the bill is to limit the liability of *ski area operators* to those injuries occurring as a result of the negligence of the *ski area operator* and to bar recovery by a skier for injuries occurring as a result of the skier's negligence or the inherent risks of skiing.

" '\* \* \* \* \*

" 'Section 2 of the bill clarifies that, in accordance with ORS 18.470, which establishes comparative negligence, and notwithstanding ORS 18.475, which eliminates the doctrine of implied assumption of risk, a skier assumes the inherent risks of skiing insofar as they are obvious, expected, or necessary. To the extent an injury is caused by an inherent risk of skiing a skier will not recover against a *ski area operator*; to the extent an injury is a result of negligence, comparative negligence applies.' Measure Analysis, Bill File, 1979 SB 329.

"*See also* Minutes, House Committee on the Judiciary, June 8, 1979, pp 8-9, 17 (member of the committee explained that SB 329 'clearly allowed for the situation where there may be injury caused by a combination of the assumption of the inherent risk by the skier and of *area operator* negligence'; where the injury is due 'solely' to assumed risks, recovery is barred; 'if there is negligence on the part of *the operator* and

negligence on the part of the skier,' comparative negligence applies)."

*Nolan*, 317 Or at 335-36 (emphasis added). We conclude that the Skiing Activities Law makes available an assumption of the risk defense only to ski area operators. Therefore, the court erred in giving the instructions based on that law.

■■   That conclusion does not end our inquiry. Instructional error is not necessarily reversible error. *Hutcheson v. City of Keizer*, 169 Or App 510, 528, 8 P3d 1010 (2000). We review jury instructions as a whole and "will reverse only if we 'can fairly say that the instruction probably created an erroneous impression of the law in the minds of the [jurors] which affected the outcome of the case.' " *Bray v. American Property Management Corp.*, 164 Or App 134, 142, 988 P2d 933 (1999), *rev den*, 330 Or 331 (2000) (quoting *Waterway Terminals*, 256 Or at 370). In the present case, we conclude that the erroneous instructions did not affect the outcome of the case.

Central to our conclusion is the verdict form that the jury used. The form contained eight questions. The first four are as follows:

"1.   Was Defendant Nidecker negligent in one or more of the ways alleged in the plaintiff's complaint and, if so, was such negligence a cause of damage to the plaintiff? ANSWER: (Insert Yes or No)

"2.   Was Defendant Free Motion negligent in one or more of the ways alleged in the plaintiff's complaint and, if so, was such negligence a cause of damage to the plaintiff? ANSWER: (Insert Yes or No)

"3.   Did defendant Nidecker manufacture, sell or lease a defective product which was unreasonably dangerous to the plaintiff and, if so, did such product cause damage to plaintiff? ANSWER: (Insert Yes or No)

"4.   Did Defendant Free Motion sell, lease or provide a defective product which was unreasonably dangerous to the plaintiff and, if so, did such product cause damage to the plaintiff? ANSWER: (Insert Yes or No)"

Immediately after those questions, the form stated, "If you answered 'Yes' to any of Questions 1 through 4, proceed to

Question 5." Question five asked if plaintiff was negligent and, if so, whether his negligence was a cause of his damages; question six asked if the inherent risks of skiing caused plaintiff's damages; question seven asked jurors to list the percentage of fault attributable to each defendant, to plaintiff, and to the inherent risks of skiing. If plaintiff's negligence plus the inherent risks of skiing amounted to more of a cause of plaintiff's damages than defendants' combined fault did, the jury was instructed to return a verdict for defendants; otherwise, the jury was instructed to proceed to question eight, which allocated damages. Nine jurors answered "No" to questions one through four, and the jury did not proceed to the remaining questions.

Defendants maintain that, by their terms, the disputed instructions apply only to questions six, seven and eight, and because the jury, having stopped after question four, did not consider the disputed instruction in its deliberations, the instruction could not have misled it. *Herrell v. Johnson*, 136 Or App 68, 74, 899 P2d 759 (1995).

Plaintiff, however, argues that the instructions entered into and polluted the jury's deliberations regarding the first four questions:

> "**[T]he challenged instructions tell the jury that injuries to skiers are inherent risks and that skiers themselves have a duty to avoid them.** Under the foregoing verdict form, **the jury could have found that both defendants were negligent as alleged by the plaintiff and that both defendants provided to the plaintiff a snowboard which was unreasonably dangerous;** but because of the erroneous instructions it could have found that those defects did not cause the damage because the damage was inherent in the sport. Under this verdict form and these four questions, **the jury only reached the issue of causation if it first found the defendants to be at fault in each claim!**"

(Boldface in original.) Plaintiff's theory appears to be that because of the compound nature of the verdict form's first four questions—was a defendant at fault *and* did that fault cause plaintiff's damages—the jury could have concluded that a defendant was at fault but that the fault was not the cause of plaintiff's damages: Plaintiff's own negligence, in

combination with the inherent risks of skiing, outweighed defendant's fault. Further, according to plaintiff, that conclusion probably resulted from the erroneous instructions, which led the jurors to believe that, in determining whether a defendant's fault or some other factor was the cause of plaintiff's damages, defendant's fault had to be weighed against all other factors, including the inherent risks of skiing. Had those risks not entered into the calculation on plaintiff's side of the fault balance, plaintiff apparently reasons, the jury might have concluded that a defendant's fault did outweigh other causes of plaintiff's damages, in which case the jury would have proceeded to questions five through eight, possibly resulting in a verdict for plaintiff.

We find plaintiff's theory unpersuasive. With respect to the negligence claims, the special verdict form in questions one and two asked whether defendant's negligence was "*a* cause" of plaintiff's damages. The question does not ask whether defendant's negligence was *the* cause of plaintiff's damages or whether it was *the major* cause; it asks whether defendant's negligence was any cause at all. The jury answered "no." With respect to the product liability claims, the jury was asked in questions three and four whether the snowboard was defective and unreasonably dangerous and, if so, "did such product cause damage to plaintiff." Again, the question does not ask whether the product caused *most of* the damage to plaintiff; it asks whether it caused *any* damage to plaintiff. Again, the jury answered "no." In other words, the jury found *no* causal link between either defendant's negligence or its product and plaintiff's damages. Regardless of whether or not plaintiff assumed the risks and duties inherent in skiing, then, defendants could not be liable. Put another way, erroneously adding the risks and duties inherent in skiing to plaintiff's side of the causation balance would not alter the fact that, regardless of how much or how little plaintiff was responsible for his own damages, defendants were not responsible at all and for that reason could not be held liable.

We therefore conclude that the instructions erroneously allocating to plaintiff the risks and duties inherent in skiing did not affect the outcome of the case. Those instructions could, at most, have erroneously added to plaintiff's

quantum of responsibility for his own damage. But, because the jury found that defendant's fault, if any, did not cause any damage to plaintiff, the quantum of plaintiff's fault was irrelevant. No matter how much or how little he was responsible for his damages, the jury found that defendants were not responsible at all. We therefore affirm. *Waterway Terminals,* 256 Or at 370.

Affirmed.