Submitted on remand from the Oregon Supreme Court January 28, reversed and remanded in part; otherwise affirmed September 17, 2003

William VOKOUN
and Paula Vokoun,
*Respondents,*

*v.*

CITY OF LAKE OSWEGO,
a municipal corporation,
*Appellant.*

(96-11-052; CA A101203)

76 P3d 677

Timothy J. Sercombe, William K. Kabeiseman, and Preston Gates & Ellis LLP for appellant.

Tracy Pool Reeve, Mark P. Reeve, and Reeve Kearns PC for respondents.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

This case returns to us on remand from the Oregon Supreme Court. It arises out of a flooding incident that occurred when heavy rains overwhelmed a drainage system maintained by defendant City of Lake Oswego (city) and resulted in landslides that washed away a substantial amount of plaintiffs' land. Plaintiffs initiated an action against the city for, among other things, negligence and inverse condemnation, and they ultimately prevailed on those two claims. The city appealed, advancing a number of assignments of error, including that the trial court should have granted motions for a directed verdict against both the negligence and the inverse condemnation claims.

We agreed that the trial court should have granted the directed verdict motions and reversed without addressing the other assignments. *Vokoun v. City of Lake Oswego*, 169 Or App 31, 7 P3d 608 (2000). The Supreme Court concluded that the trial court correctly denied the directed verdict motions, reversed, and remanded for our consideration of the remaining assignments of error. *Vokoun v. City of Lake Oswego*, 335 Or 19, 56 P3d 396 (2002). We now address the remaining assignments of error, which are (1) the trial court erred in delivering misleading jury instructions on the inverse condemnation claim; (2) the trial court erred in submitting the inverse condemnation claim before adjudicating the negligence claim; (3) the trial court erred in delivering an erroneous jury instruction on the negligence claim; (4) the trial court erred in permitting plaintiffs to recover duplicative damages; and (5) the trial court erred in failing to limit certain of the damages pursuant to the Oregon Tort Claims Act, ORS 30.270. We conclude that the trial court erred in failing to cap certain of plaintiffs' damages and otherwise affirm.

## I. FACTUAL BACKGROUND

We take the facts as described in the Supreme Court's opinion:

"In 1989, plaintiffs purchased a home on the north side of Rocking Horse Lane in the Red Fox Hills Subdivision in Lake Oswego. The subdivision had been developed in the

early 1970s on a hill above Tryon Creek State Park. Plaintiffs' property slopes down to the north, into a ravine at the bottom of the hill. The ravine runs approximately parallel to the northern border of plaintiffs' property. Plaintiffs' house is located on the south side of their property.

"The city built a storm drain that runs underground from Rocking Horse Lane north along a drainage easement near the western border of plaintiffs' property. An outfall pipe, 12 inches in diameter, located near the northwest corner of plaintiffs' property, discharges the water into the ravine. The water then flows east along a drainage course towards Tryon Creek. During periods of heavy rainfall, the outfall pipe discharges a high volume of water.

"* * * * *

"On February 8, 1996, following a period of unusually heavy rain, a landslide occurred on the hillside on which plaintiffs' property is located. The landslide continued to grow in the following months. The landslide caused a four-foot drop in the land approximately nine feet from plaintiffs' house and a 20-foot drop approximately 19 feet from the house. The landslide damaged a deck on the house and a dog run, and both had to be removed. The landslide also destroyed many trees. If plaintiffs had not taken remedial action, the land would have continued to slide, eventually destroying the house.

"In November 1996, plaintiffs filed this action against the city for inverse condemnation and negligence. In their claim for inverse condemnation, plaintiffs alleged that the city had 'taken' their property for a public use by constructing a storm drain pipe and outfall pipe in a manner that destabilized the soils on and adjacent to plaintiffs' property, causing a landslide. As relates to issues on appeal regarding plaintiffs' negligence claim, plaintiffs alleged, among other things, that the city was negligent by failing properly to inspect the outfall and drainage course to discover the erosion that was occurring and to take reasonable steps to prevent a catastrophic landslide."

335 Or at 21-23 (footnotes omitted).

## II.   DISPOSITION OF THE MERITS

A.   *Inverse condemnation jury instructions*

The trial court instructed the jury, in part, as follows:

"Plaintiffs assert an inverse condemnation claim against the City. Inverse condemnation is a claim which a property owner may bring against a governmental body if the government has taken the owner's property for public use and has not gone through the normal condemnation procedure and has not paid for the land. Plaintiffs contend that the landslide was, in effect, a taking of their property by the City.

"Plaintiffs must prove by a preponderance of the evidence all of the following three elements to recover under their inverse condemnation theory: First, that the landslide constituted a taking; that is, substantially depriving [*sic*] the Plaintiffs of the use of their property. Second, that it was the City that took the property by virtue of the landslide. This means that the City, through its actions, must be shown to have caused the landslide. And, third, that the City took the property through the landslide for public use.

"* * * * *

"Storm water, sewer, or drain benefitting the public with a neighborhood in the vicinity of the improvement is a public use for which property may be taken. Defendant, City of Lake Oswego, a municipal corporation organized and existing under the laws of the State of Oregon, is a governmental entity entitled to take property for public use.

"In order to establish a taking, Plaintiffs are not required to show any specific intention on the part of the Defendant to appropriate Plaintiffs' property nor are they required to establish that the Defendant was negligent. Rather, the Defendant is responsible for any natural consequences of its actions regardless of whether those consequences were themselves intended.

"Naturally necessary lateral support is that support which the supported land itself requires and which is a natural condition and in the natural condition of the surrounding land it would require. The Plaintiffs' right to lateral support is an interest in land which may not be taken by a

municipal corporation such as Defendant without just compensation. Therefore, if you find the Defendant's acts caused a withdrawal of lateral support from Plaintiffs' property resulting in a landslide, Plaintiffs' property has been taken, and they will be entitled to recover just compensation for the taking."

The city argues that those trial instructions were misleading in three respects. First, it complains that the instructions failed to define "takings" to exclude mere property damage. Second, it complains that the instructions failed to define "public use" to mean "use and occupation of [plaintiffs'] land which is direct." Third, it complains that the instructions failed to include an explanation that the city "has no liability on account of any harm to plaintiffs or their property resulting from the design or construction of the outfall and drain system." Plaintiffs argue that the instructions are not misleading because, taken as a whole, they accurately describe the law. We agree with plaintiffs.

■ In reviewing the propriety of jury instructions, we will not reverse unless we can "fairly say that the instruction[s] probably created an erroneous impression of the law in the minds of the [jurors] which affected the outcome of the case." *Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970).

■ We begin with the complaint that the instructions were defective because they did not include an explanation that a compensable taking does not include mere damage to property. The court's instruction defined a taking as a substantial deprivation of the use of property. That definition was entirely correct. *See Vokoun*, 335 Or at 26 ("A 'substantial interference' with the use and enjoyment of property is sufficient" to establish a taking of property.) (quoting *Hawkins v. City of La Grande*, 315 Or 57, 68-69, 843 P2d 400 (1992)). And the city does not contend otherwise. The fact that the instruction did not also explain what a taking is *not* does not make it erroneous.

■ We turn to the argument that the definition of "public use" should have been defined as "use and occupation * * * which is direct." According to the city, there can be no

compensable "taking" unless the property taken is put to beneficial use by a governmental entity. To the contrary, however, is the Supreme Court's decision in *Lincoln Loan v. State Hwy. Comm.*, 274 Or 49, 55, 543 P2d 105 (1976), in which the court concluded that "[t]he state need not benefit from the 'taking' for the action to lie." More recently, in *Hawkins*, the court reversed the dismissal of an inverse condemnation claim based on the destruction of crops and livestock occasioned by the City of La Grande's release of sewage-laden water onto the plaintiff's farm land. 315 Or at 79-73. The court upheld the takings claim without identifying any benefit that the city obtained from the sewage spill. *Id.*

■       Finally, we turn to the argument that the court should have cautioned the jury that the city was not to be found liable for defective design or construction of the drainage system. Plaintiffs, however, did not assert a claim based on defective design or construction. In fact, the court earlier had dismissed such a claim. The city does not explain, and we do not understand, why the court was obligated to explain to the jury both what was embraced by the inverse condemnation claim and what was not. We conclude that the trial court did not err in instructing the jury on the inverse condemnation claim.

B.   *Submitting the inverse condemnation claim before adjudicating negligence*

■       At the close of plaintiffs' case, the city moved for a directed verdict on the inverse condemnation claim on the ground that the claim was not ripe. According to the city, a claim for inverse condemnation will not lie if there exists an adequate alternative remedy. In this case, the city argued, the alternative remedy lies in negligence. The trial court denied the motion. On appeal, the city renews its argument that plaintiffs' takings claim is not ripe until the negligence claim has been fully adjudicated. Plaintiffs respond that the city's argument is refuted by *Hawkins*. We agree with plaintiffs.

In *Hawkins*, the plaintiffs asserted claims for both negligence and inverse condemnation. The trial court dismissed the inverse condemnation claim but allowed the negligence claim to go to a jury, which returned a verdict for the

plaintiffs. The defendant appealed the jury verdict, and the plaintiffs cross-appealed, arguing that the trial court had erred in dismissing the inverse condemnation claim. The Supreme Court agreed with the plaintiffs, holding that both the inverse condemnation and the negligence claims should have been submitted to the jury. *Hawkins*, 315 Or at 72. Under *Hawkins*, therefore, the trial court did not err in submitting the inverse condemnation claim to the jury without first adjudicating the negligence claim.

C. *Negligence claim jury instructions*

The trial court instructed the jury:

"In evaluating Plaintiffs' negligence claim, you may consider only the City's acts or omissions in inspecting or maintaining the drain channel. If Plaintiffs have proven by a preponderance of the evidence that the landslide was caused by acts or omissions in the maintenance or inspection of the drain channel, then you may find for Plaintiffs. If the landslide was caused by other factors and the maintenance or inspection were not substantial factors in causing the landslide, then you must find for the City on the negligence claim."

The city took exception to the instruction on the ground that it was ambiguous and could lead to the jury making a decision on an improper basis. According to the city, by referring to the city's obligation to inspect and maintain the "drain channel," the instruction could be taken to imply that the city had an obligation to inspect and maintain the area below the outfall, which is located in Tryon Creek State Park and is not city property. Plaintiffs respond that nothing in the instructions, taken as a whole, was erroneous. Moreover, they argue, the city never asserted at trial that it did not have an obligation to inspect and maintain the drain channel below the outfall; its argument was that a failure to inspect and maintain the area was not the cause of the slide. According to plaintiffs, the city cannot be heard to complain about the matter now.

We review jury instructions as a whole and will reverse only if (1) we "can fairly say that the instruction probably created an erroneous impression of the law in the minds" of the jurors, *Bray v. American Property Management*

*Corp.*, 164 Or App 134, 142, 988 P2d 933 (1999), *rev den*, 330 Or 331 (2000), and (2) the error affected the outcome of the case.

■　　In this case, assuming for the sake of argument the validity of the city's underlying proposition of law—that it has no duty to inspect the portion of the drainage basin that lies on state property—the city has demonstrated, at best, that there is a mere possibility that the jury could have misunderstood the instruction. The city has failed to demonstrate that, taking the instructions as a whole, they "*probably* created an erroneous impression of the law." *Bray*, 164 Or App at 142 (emphasis added). In fact, elsewhere in the instructions, the trial court elaborated on plaintiffs' negligence claim, explaining that plaintiffs had alleged that the city was negligent in "failing to inspect and maintain the outfall of a drainage course[,] to discover the erosion and to prevent the erosion * * *," which does not refer to an alleged failure to inspect or maintain state property.

Even assuming that the instruction was erroneous, it does not necessarily follow that reversal is required. ORS 19.415(2); *Stiles v. Freemotion, Inc.*, 185 Or App 393, 399, 59 P3d 548 (2002). In this case, the city did not even address why it believes the instruction that the court delivered, if erroneous, was prejudicial. We agree with plaintiffs that the instruction on their negligence claim provides no basis for reversal.

D.　*"Duplicative" damages*

The jury returned a verdict in favor of plaintiffs on both the inverse condemnation and the negligence claims. On the former claim, the jury awarded plaintiffs $138,410 as the "fair market value of property taken plus damage, if any, to plaintiffs' remaining property." On the negligence claim, the jury awarded damages separately to the individual plaintiffs. To plaintiff Paula Vokoun, the jury awarded $69,205 in "property damage," $80,750 in economic damages, and $12,000 in noneconomic damages. To plaintiff Bill Vokoun, the jury also awarded $69,205 in "property damage," $80,750 in economic damages, and $12,000 in noneconomic damages. The trial court struck the two awards of $69,205 in property damage on the ground that those awards duplicated the

award on the inverse condemnation claim, which included damage to property. It then entered judgment in favor of plaintiffs for $138,410 on the inverse condemnation claim and a total of $185,500 on the negligence claim.

On appeal, the city argues that the economic damages component of the negligence award (a total of $161,500) is "duplicative" of the inverse condemnation award. According to the city, the inverse condemnation award is based on the value of the property, which necessarily includes the costs to repair it that are the bases for the award of economic damages on plaintiffs' negligence claim. Plaintiffs argue that the economic damages component of their negligence award comprises different damages from those covered by the inverse condemnation award.

We need not address the parties' arguments, because the city failed to preserve its assignment of error. We have an independent obligation to determine whether an argument advanced on appeal was preserved at trial. *State v. Wyatt*, 331 Or 335, 344-46, 15 P3d 22 (2000). In this case, the city's brief on appeal does not set out, verbatim, the portion of the record below demonstrating its preservation of error.[1] It does summarize two objections raised at trial, but neither concerns the issue that it now argues on appeal.

First, the city notes that it "objected to the form of the judgment." The objection, however, was that "[t]he proposed form of judgment would award plaintiffs damages in excess of the cap under the Tort Claims Act," not that the inverse condemnation and negligence awards were in any way duplicative.

Second, the city notes that it moved for judgment notwithstanding the verdict. Again, however, the city's motion with respect to damages identified only two issues: (1) that the court erred in instructing the jury on the nature of damages that may be awarded on plaintiffs' inverse condemnation claim; and (2) that the court should impose a cap

---

[1] Similarly, the city's assignment of error does not actually identify the specific ruling that it purports to challenge. Instead, it argues that the trial court erred in "failing to correct the verdict." *See* ORAP 5.45(c) (assignments of error "shall identify precisely the legal, procedural, factual, or other ruling that is being challenged").

on the damages awarded on the negligence claim pursuant to the Tort Claims Act. Neither issue fairly embraces what the city now advances on appeal, that is, an argument that the economic damages awarded on plaintiffs' negligence claim are duplicative of the damages awarded on the inverse condemnation claim. We reject the city's assignment as unpreserved.

E.  *Applicability of Oregon Tort Claims Act limitation*

As we have noted, the city objected to the entry of judgment on the ground that the damages awarded should be capped in accordance with the Oregon Tort Claims Act. ORS 30.270 provides, in part:

> "(1)  Liability of any public body or its officers, employees or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:
>
> "(a)  $50,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence."

The city argued that, in this case, plaintiffs' claim for economic damages—the costs incurred in repairing and stabilizing their property after the landslide—was a claim for "damage to or destruction of property." Thus, the city concluded, the judgment in favor of plaintiffs should not exceed $50,000 per claimant, or $100,000 in total. The trial court overruled the objection and entered judgment for total damages of $323,910.

On appeal, the city reiterates its contention that the entire judgment should be capped at a total of $100,000. Plaintiffs argue that, to begin with, the inverse condemnation claim is not a "tort" claim to which the limitation of the Tort Claims Act applies. They argue, at best, that the limitation applies only to the damages awarded on their negligence claim. Even then, they insist, their claim for economic damages is not a "claim for damage to or destruction of property, including consequential damages." According to plaintiffs, their economic damages "flow as a consequence of the withdrawal of lateral support," not damage to their property.

### 1. *Applicability of ORS 30.270 to inverse condemnation claims*

We begin with the question whether the damage limitation of ORS 30.270(1)(a) applies to inverse condemnation claims. The city contends that it does, arguing that a claim for inverse condemnation is a tort or, more to the point, a "claim for damage to or destruction of property" within the meaning of the statute. Plaintiffs argue that the statute does not apply to inverse condemnation claims. We agree with plaintiffs.

Whether the Tort Claims Act applies to inverse condemnation claims poses a question of statutory construction, which we answer by applying the rules of construction set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We attempt to determine the intended meaning of the statute by examining the text in context and, if necessary, the legislative history and other aids to construction. *Id.*

The text of the statute refers to claims for "damage to or destruction of property." An action for inverse condemnation is one for damages asserted against a governmental entity with the power of eminent domain that has taken private property for public use without initiating condemnation proceedings, that is, without paying just compensation. *See generally City of Keizer v. Lake Labish Water Control Dist.*, 185 Or App 425, 429-31, 60 P3d 557 (2002) (describing the nature and theory of inverse condemnation claims). It is a direct action to enforce the self-executing provisions of Article I, section 18, of the Oregon Constitution or the Fifth Amendment to the United States Constitution, both of which prohibit takings of private property for public use without the payment of just compensation. *Id.* at 430. "Just compensation" has been construed by the courts to mean the full value of the property taken. *ODOT v. Hughes*, 162 Or App 414, 421, 986 P2d 700 (1999). In that sense, an action for inverse condemnation is not a tort; it is an action to enforce the state or federal constitution. Consistent with that notion is the Supreme Court's *dictum* in *Cereghino et al. v. State Highway Com.*, 230 Or 439, 443, 370 P2d 694 (1962), that actions for inverse condemnation "are not tort actions." 230 Or at 443.

On the other hand, it also could be argued that an inverse condemnation action is an action for "damage to or destruction of property," in the sense that it seeks monetary relief for a taking—that is, for destruction—of some property right. Neither construction is wholly implausible.

■ The parties have cited to us no legislative history that addresses the precise issue before us, and we are aware of none. We therefore turn to applicable maxims of statutory construction. One that pertains is that we must construe statutes, if possible, to avoid constitutional difficulties. *State v. Duggan*, 290 Or 369, 373, 622 P2d 316 (1981). In this case, the construction advanced by the city poses just such a constitutional difficulty. If the city were correct that the $50,000 limitation applied to inverse condemnation claims, then the statutory limitation would deprive claimants—at least claimants such as plaintiffs in this case who claim the value of their property taken exceeds $50,000—of what the state and federal constitutions guarantee, namely, just compensation in the form of the full fair market value of the property taken. We conclude that ORS 30.270(1)(a) does not apply to inverse condemnation actions.

### 2. *Applicability of ORS 30.270(1)(a) to the negligence claim*

There remains the question whether ORS 30.270(1)(a) applies to plaintiffs' negligence claim. The city argues that it does, because plaintiffs' negligence claim for the cost of repairing and stabilizing their property and the emotional distress associated with the landslide is a claim for "damage to or destruction of property, including consequential damages." Plaintiffs insist that their claim is not for damage to their property, but for loss of lateral support.

At the outset, we must address a matter of preservation. In the city's objections to the form of judgment, as well as its motion for a directed verdict and its motion for a judgment notwithstanding the verdict, the city argued only that the *economic* damages awarded under the negligence claim are subject to ORS 30.270. The city has cited to us no portion of the record demonstrating that it argued to the trial court that the statute also applies to the noneconomic damages awarded under that claim. We therefore limit our discussion

to whether ORS 30.270(1)(a) applies to plaintiffs' award of economic damages under their negligence claim. On that issue, we agree with the city.

■■■■■ Whether denominated a claim for "loss of lateral support" or otherwise, plaintiffs' claim for the cost of repairing and stabilizing their property remains a claim for damage to their property. Lateral support is a property right, *ODOT v. Winters*, 170 Or App 118, 128-29, 10 P3d 961 (2000), *rev den*, 332 Or 239 (2001), and plaintiffs' claim seeks compensation for the loss of it. Under any reasonable definition of the term, plaintiffs' claim is one for "damage to or destruction of property."

Reversed and remanded for entry of judgment for a total of $100,000 in economic damages on the negligence claim; otherwise affirmed.