Argued and submitted October 9, affirmed December 11, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANIEL MARTIN SLIGHT,
*Defendant-Appellant.*

Marion County Circuit Court
17CR67722, 17CR07625;
A166774 (Control), A166776

456 P3d 366

In this consolidated criminal appeal, defendant appeals from two judgments of conviction for one count of sexual abuse in the first degree and two counts of encouraging child sexual abuse in the first degree. Defendant executed conditional guilty pleas reserving his right of review of specific adverse pretrial rulings, including his motion in opposition to the denial of pretrial release. On appeal, the parties first dispute whether the pretrial release issue is moot in light of defendant's subsequent conviction. Second, the parties dispute whether the evidence was sufficient to support the trial court's denial of pretrial release. *Held*: Even though defendant is no longer confined pursuant to the pretrial detention ruling, a ruling in defendant's favor on appeal would give him the right to withdraw his pleas; thus, the Court of Appeals determined that the pretrial release issue was not moot. Additionally, in examining the interplay between pretrial release statutes, the Court of Appeals determined that the primary and secondary release criteria as set forth in ORS 135.230 concern the form of release only, and do not govern on whether release can be denied at all. Whether pretrial release can be denied in cases involving violent felonies is governed by ORS 135.240, which requires that a denial be based on clear and convincing evidence of a danger of physical injury or sexual victimization to the victim or members of the public by the defendant while on release. In finding clear and convincing evidence, the trial court relied, in part, on statements by the prosecutor at the release hearing. The Court of Appeals held that was error, as an attorney's unilateral assertions are not evidence. Nevertheless, even when excising the prosecutor's statements, the Court of Appeals determined that the evidence was sufficient to deny pretrial release.

Affirmed.

Sean E. Armstrong, Judge.

Jason E. Thompson argued the cause for appellant. Also on the brief was Ferder Casebeer French & Thompson, LLP.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and James, Judge, and Landau, Senior Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

In this consolidated criminal appeal, defendant appeals from a judgment of conviction in Marion County Case No. 17CR07625 of one count of sexual abuse in the first degree, and one count of sodomy in the first degree. In Marion County Case No. 17CR67722, defendant appeals from an amended judgment convicting him of two counts of encouraging child sexual abuse in the first degree. The court entered both judgments following defendant's entry of two conditional guilty pleas pursuant to ORS 135.335(3), which provides a mechanism for a defendant to reserve "in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion." We affirm.

The underlying facts of this case are minimally relevant to our analysis and we recount them briefly. Defendant's nine-year-old daughter accused defendant of repeatedly sexually abusing her over a period of time. On February 27, 2017, the Marion County grand jury indicted defendant in Marion County Case No. 17CR07625 for five counts of sexual abuse in the first degree, two counts of sodomy in the first degree, and two counts of attempted sodomy in the first degree.

Defendant requested a pretrial release hearing, asking the court to order a security release and set bail at an amount that his parents would "more likely than not" post. The state opposed the request, arguing that there was "a danger of physical injury or sexual victimization to the victim or members of the public by the defendant while on release." After an evidentiary hearing, the trial court ordered defendant held without bail.

While that case was pending, on June 15, 2017, Detective Staples, with the Salem Police Department, applied for, and was granted, a search warrant, reportedly, for defendant's computer, which had been in the custody of the McMinnville Police Department's since 2011. An informant told Staples that she had dated defendant in 2011, and that at some point in her relationship with him, he had showed her child pornography on that computer. Staples also indicated that he was "made aware of an investigation

in 2011 with the McMinnville Police Department involving [defendant] and [the informant]." Ultimately, according to Staples, the McMinnville Police Department received the laptop in question and had held it ever since. A forensic evaluation of that computer led to the filing of charges in Marion County Case No. 17CR67722—three counts of encouraging child sexual abuse in the first degree.

Defendant moved to controvert the affidavit in support of the search warrant. The court denied the motion. On January 2, 2018, pursuant to ORS 135.335(3), in Case No. 17CR07625, defendant entered conditional guilty pleas to Counts 1 and 6. Similarly, that same day, in Case No. 17CR67722, defendant entered conditional no contest pleas to Counts 1 and 2. This appeal followed, and the cases were consolidated.

On appeal, defendant advances two assignments of error, the first of which challenges the trial court's denial of his motion to controvert the search warrant of his computer. We reject that assignment without discussion. In his second assignment of error he challenges the denial of his motion for pretrial release. The state responds that any pretrial detention ruling is now moot, and therefore nonjusticiable, in light of defendant's subsequent conviction. Alternatively, the state argues that even if defendant's challenge to the court's ruling is justiciable, the trial court did not err because, on this record, clear and convincing evidence established that defendant presented "a danger of physical injury or sexual victimization to the victim or members of the public *** while on release." ORS 135.240(4)(a). Finally, the state argues that even if there was not clear and convincing evidence of a risk of physical injury or sexual victimization under ORS 135.240(4), the trial court articulated a second independent basis for its decision—the "primary release" criteria set forth in ORS 135.230(7). According to the state, the primary release criteria permitted the trial court to deny release based on its conclusion that "the method most likely to ensure that [defendant] appears at trial and is not a danger to the public is to have him remain in custody." Because defendant does not separately challenge the trial court's "primary release criteria" rationale, argues the state, defendant cannot prevail on appeal.

Whether the statutory requirements existed to deny pretrial release is a question of law, reviewed for errors of law. *Haynes v. Burks*, 290 Or 75, 79 n 3, 619 P2d 632 (1980) (The court must evaluate "the strength of the state's proof rather than the exercise of discretion. The law does not leave a court discretion to release a defendant charged with murder when the proof of guilt is 'evident or the presumption strong,' nor to deny release when the proof, though sufficient to go to trial, falls below this standard") (internal citations omitted). In making that legal assessment, as is customary, we defer to the trial court's factual findings where there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

At the outset, although preservation is not contested in this case, we have an "independent obligation to determine whether an argument advanced on appeal was preserved at trial." *Vokoun v. City of Lake Oswego*, 189 Or App 499, 508, 76 P3d 677 (2003), *rev den*, 336 Or 406 (2004) (citing *State v. Wyatt*, 331 Or 335, 344-46, 15 P3d 22 (2000)). This obligation must be satisfied even when a failure to preserve an argument has not been asserted by the opposing party. *Wyatt*, 331 Or at 346-47.

ORS 135.335(3) governs conditional pleas:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

Under the statute, for a conditional plea agreement to effectively preserve an issue for appellate review, the plea agreement must do two critical things: First, it must reserve the "the right" to "review" in writing. Second, it must "specify" the pretrial motion for which appellate review is sought.

We have interpreted "specify," as used in ORS 135.335(3), to mean "to mention or name in a specific or explicit manner." *City of Lake Oswego v. Albright*, 222 Or App 117, 119-20, 193 P3d 988 (2008). In *Albright*, we considered a conditional plea where the plea petition contained the following language: "Stip facts w[ith] reservation of appeal

rights[.]" *Id.* at 119. We held that language insufficient under the statute, reasoning that

> "[a]lthough defendant made a handwritten notation on his plea petition, that notation does not specify in writing the pretrial motion as the subject of the contemplated appeal, as the statute requires. The statute means what it says. The legislature's intent to restrict the reviewability on appeal to specified rulings in the event of a conditional plea of guilty is apparent on the face of ORS 135.335(3), and we are without authority to relieve defendant from the burden of complying with what the legislature intended."

*Id.* at 120.

Here, defendant's plea petition reads, "This is a conditional plea—see court record for specific conditions of plea." The parties are in agreement that the "court record" referenced in the plea petition is the following portion of the transcript:

> "[DEFENSE COUNSEL]:   And with that, also, Your Honor, it is important that the record reflect that this is a conditional plea. Both sides are well aware of the conditions attached to this plea.

> "The plea petitions themselves reference the nature of the conditional plea in two places. The first paragraph, on paragraph—on page 2 specifically states that these are conditional pleas and that the specifics of those conditions would be found in this record.

> "And then they also—both of the petitions reference in paragraph 11 walking back the blanket prohibition of appeals to specifically exclude the terms of these conditional pleas. So the—the plea petitions reflect this agreement in two places, Your Honor. And if there's any ambiguity about that from the State at this point, I'd like the State to put that on the record. Otherwise, we'll assume the State has no objection to the nature—to the fact that these are conditional pleas.

> "THE COURT:   Okay. Ms. Cadotte.

> "[PROSECUTOR]:   There's no objection to that, Your Honor.

> "THE COURT:   Okay.

"[DEFENSE COUNSEL]: And then those specific objections—those specific conditions are these, Your Honor: That [defendant] has the ability to appeal any and all pretrial motions made by Your Honor in this matter, including, but not limited to the motion to suppress hearing, the motion to controvert, and then any pretrial motions arising from bail or release. I think we had at least—I want to say at least three of those, Your Honor. Two initially and then one just recently over my client's—the death of my client's mother.

"All of those are envisioned as part of this conditional plea, so that there's no restrictions on those appeals. And again, if the State has any issues with that, now would be the time for them to bring that up.

"THE COURT:   Okay.

"[PROSECUTOR]:   And, Your Honor, the State has no issues with that."

We conclude that, in this case, defendant's reference to the record in the plea petition satisfies the requirements of ORS 135.335(3) to specify the pretrial rulings for which appellate rights are being reserved. While ideal practice might advise that the pretrial motions being "specified" be included in the written plea petition, the structure of ORS 135.335(3) indicates that it is the reservation of appellate rights that must be in writing, whereas the specification of the pretrial motions need not always be set forth in the written plea petition itself. The statute does not require that the specification of which pretrial motions are at issue occur in a particular form. Accordingly, that can be accomplished by, for example, stating them in the plea petition, by incorporation or reference to another document in the record, or, as in this case, through citation to a portion of the transcript where the specific pretrial rulings were identified on the record. Here, as quoted above, defense counsel listed specific pretrial motions for which he was seeking reservation of appellate review. The record clearly reflects that neither the state, nor the trial court, were uncertain which "specified" pretrial motions were at issue. Accordingly, the requirements of ORS 135.335(3) were satisfied.

Next, we consider whether defendant's challenge to the pretrial release decision is justiciable. The state argues that any pretrial release decision by the trial court is moot in light of defendant's subsequent convictions. We disagree.

A case is moot if the court's decision in the matter will not have "some practical effect on the rights of the parties to the controversy." *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993) (internal citation omitted). However, we have recognized that the statutory mechanism for entering into a conditional plea invests the defendant with certain rights, including the right to withdraw the plea if the defendant is successful on appeal.

> "ORS 135.335(3) provides that a defendant may enter a conditional plea and reserve the right to appeal. More to the point, it provides that, if a defendant prevails on appeal, he or she may withdraw the plea."

*State v. Dinsmore*, 182 Or App 505, 519, 49 P3d 830 (2002).

As the Oregon Supreme Court has noted,

> "before 1999, a defendant who, for example, was unsuccessful in pretrial efforts to suppress evidence was typically required to enter a plea of not guilty and proceed to trial—often a trial on stipulated facts—to preserve the ability to contest the adverse pretrial ruling on that motion. [A conditional plea] provides a statutory mechanism for a criminal defendant to later withdraw a guilty plea if that defendant prevails in challenging the pretrial ruling reserved for review. As the last sentence of that subsection states, a defendant who is successful on appeal may withdraw his or her plea and enter a new plea of guilty, not guilty, or no contest. If a defendant withdraws the plea and enters a plea of not guilty, then that defendant may proceed to trial with the benefit of a successful challenge to an earlier pretrial ruling."

*State v. McAnulty*, 356 Or 432, 445, 338 P3d 653 (2014) (internal citations omitted).

Accordingly, even though defendant is no longer confined pursuant to the pretrial detention ruling, our decision on the legality of that ruling will have a practical effect on defendant's rights—if defendant prevails on appeal, he

will be invested with a right to withdraw his plea. The issue, therefore, is not moot.

Having resolved those two preliminary questions, we now turn to the merits of the trial court's pretrial release decision. On appeal, the parties dispute whether there was sufficient evidence to support the trial court's denial of pretrial release. But before we can evaluate the sufficiency of evidence in this case, it is necessary to first examine the statutory requirements governing pretrial release more generally. In interpreting the statute, our goal is to ascertain the intent of the legislature that enacted it, *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009), which we do by examining the text and context of the provisions at issue, looking to legislative history as necessary. *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012). "In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

Oregon's statutory scheme for pretrial release derives from two constitutional provisions. The first, Article I, section 14, of the Oregon Constitution, which dates from the time of the adoption of the state constitution, provides that "Offences [*sic*], except murder, and treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the presumption strong." As the Oregon Supreme Court has noted, that provision established pretrial release as a right in Oregon, distinct from the federal system.

> "The concept of a *right* to bail, as set forth in Article I, section 14, and in similar provisions in the constitutions of other states, was foreign to the English court system, just as it is foreign to the system of bail in the federal judicial system under the Eighth Amendment [to the United States Constitution]."

*Priest v. Pearce*, 314 Or 411, 417, 840 P2d 65 (1992) (emphasis in original; internal citation omitted).

In 1999, the citizens of Oregon adopted Article I, section 43, of the Oregon Constitution, which added to the constitutional scheme for pretrial release. In relevant part,

Article I, section 43, provides that designated victims of crime have

> "[t]he right to have decisions by the court regarding the pretrial release of a criminal defendant based upon the principle of reasonable protection of the victim and the public, as well as the likelihood that the criminal defendant will appear for trial. Murder, aggravated murder and treason shall not be bailable when the proof is evident or the presumption strong that the person is guilty. Other violent felonies shall not be bailable when a court has determined there is probable cause to believe the criminal defendant committed the crime, and the court finds, by clear and convincing evidence, that there is danger of physical injury or sexual victimization to the victim or members of the public by the criminal defendant while on release."

Or Const, Art I, § 43(1)(b).[1]

Oregon's statutory scheme for pretrial release—ORS 135.230 through 135.290—was created in furtherance of those two constitutional provisions. We begin with some key definitions. ORS 135.230(8) defines "release" as "temporary or partial freedom of a defendant from lawful custody

---

[1] It is an unresolved question precisely how Article I, section 14, and Article I, section 43, interact. To date, only one case has mentioned the overlap, and that was the context of pretrial release when the defendant was charged with murder. In *Rico-Villalobos v. Giusto*, 339 Or 197, 201 n 3, 118 P3d 246 (2005), the Oregon Supreme Court noted:

> "In the trial court, the state, rather than relying on the bail provision of Article I, section 14, of the Oregon Constitution, cited Article I, section 43(b). That provision, which was added to the constitution in 1999, provides, in part: 'Murder, aggravated murder and treason shall not be bailable when the proof is evident or the presumption strong that the person is guilty.' The quoted sentence differs from the parallel sentence in Article I, section 14, only in the addition of the crime of 'aggravated murder' to the list of potentially nonbailable offenses and the addition of the words 'that the person is guilty' at the end of the sentence. No party cited Article I, section 43(b), in any brief in this court or suggested that the quoted sentence has any different meaning than the parallel sentence in Article I, section 14. We decide this case under ORS 135.240(2)(a) and Article I, section 14, because those are the grounds upon which the parties briefed and argued the case in this court, and we express no opinion as to whether Article I, section 43(b), states a different standard for determining when bail may be denied."

Here, as in *Rico-Villalobos*, neither party focuses on the differences between the two constitutional provisions. Instead, both parties argue this case based on statutory grounds. We therefore express no opinion as to whether the statutes at issue in this case adequately reflect the constitutional requirements.

before judgment of conviction or after judgment of conviction if defendant has appealed."

There are three types of "release" available to a magistrate making a release decision: personal recognizance, security release, and conditional release. The first, personal recognizance, is "the release of a defendant upon the promise of the defendant to appear in court at all appropriate times." ORS 135.230(6). Except for certain serious felonies (discussed below), recognizance release is the default presumptive form of release. *See* ORS 135.243(3) ("A person in custody, otherwise having a right to release, shall be released upon the personal recognizance unless *** [r]elease criteria show to the satisfaction of the magistrate that such a release is unwarranted.").

The second, security release, means "a release conditioned on a promise to appear in court at all appropriate times which is secured by cash, stocks, bonds or real property." ORS 135.230(12). The third, conditional release, is "a nonsecurity release which imposes regulations on the activities and associations of the defendant." ORS 135.230(2). A defendant released on recognizance is not asked to post a financial security amount, nor are there conditions placed on the release. As is clear from the statute, the three types of release are independent, with little overlap.

In choosing among those three types of release, the releasing magistrate makes a "release decision."

> "'Release decision' means a determination by a magistrate, using primary and secondary release criteria, which establishes the form of the release most likely to ensure the safety of the public and the victim, the defendant's court appearance and that the defendant does not engage in domestic violence while on release."

ORS 135.230(10). Thus, a "release decision" is a decision as to the "form of release," not a decision as to whether release shall be ordered in the first instance. Accordingly, the "primary release criteria" and "secondary release criteria" set forth in ORS 135.240(7) and (11) respectively guide the magistrate's decision making as to what *form* of release—recognizance, security, or conditional—is most appropriate, and if conditional release, what conditions are best suited.

The determination of whether a defendant is releas-able at all—in essence, when release in any form can be denied—is governed by ORS 135.240, which provides, as relevant to this case:

"(4)(a)  Except as otherwise provided in subsection (5) of this section, when the defendant is charged with a violent felony, release shall be denied if the court finds:

"(A)  Except when the defendant is charged by indict-ment, that there is probable cause to believe that the defen-dant committed the crime; and

"(B)  By clear and convincing evidence, that there is a danger of physical injury or sexual victimization to the victim or members of the public by the defendant while on release.

"(b)  If the defendant wants to have a hearing on the issue of release, the defendant must request the hearing at the time of arraignment in circuit court. If the defendant requests a release hearing, the court must hold the hearing within five days of the request.

"(c)  At the release hearing, unless the state stipulates to the setting of security or release, the court shall make the inquiry set forth in paragraph (a) of this subsection. The state has the burden of producing evidence at the release hearing subject to ORS 40.015(4) [(Rule 101. Applicability of Oregon Evidence Code)].

"(d)  The defendant may be represented by counsel and may present evidence on any relevant issue. However, the hearing may not be used for purposes of discovery.

"(e)  If the court determines that the defendant is eli-gible for release in accordance with this subsection, the court shall set security or other appropriate conditions of release."

ORS 135.240 creates a mechanism by which release for a certain category of charged crimes, specifically for this case, "violent felonies," defined as "a felony offense in which there was an actual or threatened serious physical injury to the victim, or a felony sexual offense," ORS 135.240(6), can be denied based upon an evidentiary determination. That determination can occur entirely on paper, or, at a defendant's request, can occur following a hearing. At that

hearing, the "state has the burden of producing evidence" and the defendant has a corollary right to "present evidence." Whether or not a hearing is held, a denial of release requires the magistrate to make two necessary determinations. First, the court must find that there exists "probable cause to believe that the defendant committed the crime." That prong is met if defendant was charged by indictment. Second, the court must conclude that "clear and convincing evidence," either in the record, or from evidence presented by the litigants at the hearing, establishes that "there is a danger of physical injury or sexual victimization to the victim or members of the public by the defendant while on release."

Absent that finding, the magistrate is without authority to deny release and must make a "release decision" pursuant to ORS 135.230(10) choosing among the types of release. However, for violent felonies, recognizance release is not permitted. ORS 135.240(4)(e) provides that the magistrate may only "set security or other appropriate conditions of release." In deciding between security release and conditional release, or in crafting the conditions of release, the magistrate is bound by ORS 135.245(3), which states:

> "If the magistrate, having given priority to the primary release criteria, decides to release a defendant or to set security, the magistrate shall impose the least onerous condition reasonably likely to ensure the safety of the public and the victim and the person's later appearance and, if the person is charged with an offense involving domestic violence, ensure that the person does not engage in domestic violence while on release."

Having discussed the statutory requirements for pretrial release, we now turn to their application in this case. According to the state, the record before the magistrate showed the following:

- Defendant had previous convictions for "domestic violence harassment" involving the victim's mother, as well as a conviction for reckless endangerment concerning the minor victim that involved him breaking "a window to get in."

- The victim's mother reported that she and defendant had "a lengthy history of violence," and that defendant had violated no contact orders "multiple times," including a "violation of a restraining order constituting domestic violence."

- The details of the abuse underlying the charges, as related by the prosecutor. According to the state, "[t]hat evidence—the nature of the abuse, its occurrence over an extended period of time, and defendant's attempts to prevent the victim from disclosing the abuse—demonstrate that he is a sophisticated predator who is adept at manipulation."

- Defendant's criminal history.

In assessing whether the state presented clear and convincing evidence of a danger of physical injury or sexual victimization to the victim or members of the public by the defendant while on release, we must first ascertain what part of the state's presentation was actually *evidence*.

ORS 135.240(4)(c) provides that, in considering whether clear and convincing evidence exists to deny release, "[t]he state has the burden of producing evidence at the release hearing subject to [OEC 101(4)]." OEC 101(4)(h), in turn, limits the applicability of the Oregon Evidence Code in "[p]roceedings under ORS chapter 135 relating to conditional release, security release, release on personal recognizance, or preliminary hearings, subject to ORS 135.173." Specifically, for release hearings, OEC 101(4) excludes "ORS 40.010 [OEC 100] to [OEC 412] and [OEC 601] to [OEC 1008]."

Despite the fact that significant portions of the evidence code have been excluded from applicability to a release hearing, the legislature has clearly mandated that such decisions be based on *evidence*. Importantly, one statutory provision regarding evidence *not* exempted from release hearings is ORS 41.010, which defines judicial evidence as "the means, sanctioned by law, of ascertaining in a judicial proceeding the truth respecting a question of fact. Proof is the effect of evidence, the establishment of the fact by evidence."

The issue of exactly what was, and was not, evidence in the release hearing was explicitly confronted by the trial court in this case.

"THE COURT: Well, if—the State has to establish by clear and convincing evidence that there is a danger of physical injury or sexual victimization to the victim or members of the public. What is the evidence as to that specific point that I get to consider?

"[PROSECUTOR]: You can consider the fact that he was indicted on these current charges. The probable cause, I gave you a brief—

"THE COURT: That goes to subparagraph (a) of (4)(a), though.

"* * * * *

"THE COURT: Right. So what I'm having trouble with is paragraph (4)(a) says, 'Except when the defendant is charged by indictment that there is probable cause to believe that the defendant committed the crime.'

"So he's been charged by indictment, so we're past (a).

"[PROSECUTOR]: Uh-huh.

"THE COURT: There is an indictment, so there's probable cause.

"And then (b) says, 'By clear and convincing evidence that there is a danger of physical injury or sexual victimization to the victim or members of the public.'

"So I've heard from the victim's mother about her concerns. What other evidence is before me that I get to consider?

"[PROSECUTOR]: I think you can take into account not just the indictment, but also the underlying facts. I think you can take into account, and I would submit—

"THE COURT: Okay. But I don't know what those are because I think all you told me was that he had been accused and that there were physical findings by Liberty House or a doctor. I don't know what those findings are—

"[PROSECUTOR]: It was a—

"THE COURT: —so how do I get to consider them?

"[PROSECUTOR]:   The nine-year-old disclosed when she came home from a visitation that she did not want to get in the shower. She was experiencing some discomfort in regards to her genital regions. There were red, itchiness. It hurt her to urinate.

"When her mother was asking why, that's when the victim disclosed that there had been abuse. She didn't disclose all of the abuse at that time to her mother because they contacted outside sources to get her seen.

"She was seen at Liberty House. When a child is seen at Liberty House, their parents are not allowed to be in the room. They're not even allowed to view that assessment or that interview. That's when the additional information and disclosures came out in regards to the multiple times that the defendant would come into her bed at night. She would wake up to him in bed naked. He would rub his genitals against her, which she calls her front private parts, and would put them in her back private parts, and it really hurt her. She told him to stop—to stop and to halt. And sometimes he would stop and go away.

"But these were—and what's important to know is that these are charged as separate criminal episodes. This isn't just one night where she's saying something happened. This was over a prolonged period of time, which I think you can take that into account, Your Honor.

"And the manipulation that went into it, where he told her, 'You cannot tell anybody or you won't be able to do some things you want to do or see some people you want to see.'

"* * * * *

"[DEFENSE COUNSEL]:  When the State stands before you and talks about facts, there are no facts yet. That is the province of either the—a bench trial or a jury trial to determine whether these things actually happened or they're just allegations that are being made.

"We anticipate being able to demonstrate not only to this Court, but to the trier of fact, that past allegations have been thoroughly investigated and debunked. So to be relying on things of that nature I think is just inappropriate at this point."

Although that colloquy involved representations by the prosecutor, we have repeatedly held that an attorney's

arguments are not evidence. *State v. Green*, 140 Or App 308, 317 n 11, 915 P2d 460 (1996) (internal citations omitted). Further, we have excluded statements by counsel as qualifying as judicial evidence. *See State v. Dugan*, 177 Or App 545, 550, 34 P3d 726 (2001) (noting that attorney arguments are not "evidence" and citing ORS 41.010); *State v. Wallace*, 170 Or 60, 73, 131 P2d 222 (1942) ("[T]he statement of the District Attorney * * * was not evidence * * *."). As we held in *State v. Ordonez-Villanueva*:

> "Thus, it is incumbent on the state in this case to prove by a means sanctioned by law that the witness is unavailable. The question is whether an assertion by counsel is a sanctioned means, *i.e.* evidence, by which unavailability may be proven. *Black's Law Dictionary* 656 (4th ed 1968) defines evidence as:
>
> > "'Any species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, concrete objects, etc., for the purpose of inducing belief in the minds of the court or jury as to their contention.'
>
> "As shown by that definition, *a unilateral assertion of counsel is not evidence*, because it is not a medium through which a party can present proof of a fact."

138 Or App 236, 244, 908 P2d 333 (1995), *rev den*, 322 Or 644 (1996) (emphasis added).

We note that we have held, in the context of sentencing proceedings—another proceeding to which the rules of evidence are largely inapplicable—that certain statements by counsel can take on an evidentiary value. In *State v. Balkin*, we held:

> "In determining whether aggravation factors supported a departure sentence, the trial court could consider any relevant evidence that it found to be trustworthy and reliable. ORS 137.090(2). Defendant suggests that the prosecutor's statements were unreliable. The presentence investigation report contains information identical to much of what the prosecutor told the court. Further, the record indicates that the court found the evidence given by the prosecutor to be trustworthy and reliable. We find no error."

134 Or App 240, 242, 895 P2d 311, *rev den*, 321 Or 397 (1995).

However, *Ordonez-Villanueva* and *Balkin* are not in conflict. In *Ordonez-Villanueva*, we noted that "unilateral assertion[s] of counsel [are] not evidence." 138 Or App at 244. In *Balkin*, we did not hold to the contrary, but simply noted that in the circumstances of that case, and under the statutory sentencing scheme at issue, the trial court was authorized to find statements by counsel that were "identical to much" of the information already contained in other evidence beyond the statements of counsel—specifically, presentence reports—reliable. *Balkin*, 134 Or App at 242.

In this case, the prosecutor's representation about the case did not occur at sentencing—after the case had proceeded through full discovery and an adjudication of guilt—but rather, at a release hearing, at which point discovery often has not yet occurred, and the facts of a case have not yet been vetted by the crucible of the adversary process. Such statements are the quintessential unilateral assertion of counsel that are not evidence, and cannot be considered in assessing whether clear and convincing evidence exists. Accordingly, we do not consider them.

However, even without the prosecutor's statements, the record contains clear and convincing evidence that there was "a danger of physical injury or sexual victimization to the victim or members of the public by the defendant while on release." First, we note that defendant had a lengthy criminal history. The specifics of defendant's criminal history were discussed at length at the hearing, and were uncontested by either party, although they debated the value of that history in predicting defendant's risk on release. While that history was entirely misdemeanors, some was directly related to crimes perpetrated against the family of the victim in this case. Against that background, the victim's mother offered a written statement, which was read into the record by the state at the hearing. That *was* evidence. In that statement, the victim's mother states, in part:

> "Your Honor, I'm asking that [defendant] continue to be held on no bail. There is a lengthy history of violence between [defendant] and myself. The State of Oregon has placed a no contact on us a few times many years ago. He

violated the no contacts multiple times. I do not feel I can feel safe or that my family will be safe if [defendant] is allowed bail and released.

"[Defendant] knows our address, he knows where [the victim] attends school, and he knows where my family lives. [Defendant] has disregard[ed] no contacts in the past and I do not feel as though he would abide by them now."

The victim's mother's statement offered at the release hearing speaks directly to the statutory issue: Does the defendant pose a danger of physical injury or sexual victimization to the victim or members of the public by the defendant while on release? Her statement does not relate a generalized fear but states her concern for further violence grounded on past behavior. Her statement, coupled with defendant's criminal history, shows a pattern of behavior that defendant has disregarded court orders against this same victim's family in the past and has engaged in criminal behavior against this same victim's family. Those facts, together, create clear and convincing evidence that defendant posed a danger of physical injury or sexual victimization to the victim or members of the public while on release. Accordingly, the magistrate did not err in denying pretrial release.

Affirmed.